**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

Kevin Joseph Gabriel Brennan,

Plaintiff.


vs.

NCAComp, Inc.,

Defendant.

Joleen Bolger (Snowdon), Individually, in her Personal
And Official capacity as Manager for NCAComp, Inc.,
Defendant.

Dr Anne Caulkins, Individually, in her personal and
official Capacity as Site Supervisor for Our Lady of
Lourdes Memorial Hospital Pain and Wellness Center,
Defendant.

Dr. Ira Breite, Individually, in his personal and official
capacity As Independent Medical Examiner;
Defendant.

Rene Barnes (Piccirilli), individually and in her personal
Capacity as Manager at the New York State Worker's
Compensation Board,
Defendant.

_____

Civil Case Number:  3:22-CV-127
(GTS/ML)

**AMENDED**
**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO**
**42 USC §§1983, 1985(3) & 1986**
And
**THE AMERICANS**
**WITH  DISABILITIES ACT**



Plaintiff demands a trial by Jury.

Plaintiff in the above-captioned action alleges as follows:

### JURISDICTION

A.    This is a civil action seeking relief and damages to defend and protect the rights
guaranteed by the Constitution of the United States.  This act is also brought pursuant to the
Americans with Disabilities Act, 42 U.S.C. Sec. §12101 etseq, as amended for discrimination
based upon a disability and the failure to accommodate same.  This is also civil action seeking
relief and/or damages to defend and protect the rights guaranteed by the Constitution of the
United States of America. This action is brought pursuant to 42USC §1983, §1985(3) and §1986.

This Court has jurisdiction of this action pursuant to 28 U.S.C. §§1331, 1343(3) and (4) and 2201.

## PARTIES

B.         Plaintiff:        Kevin Joseph Gabriel Brennan

           Address:         319 Exchange Avenue

                            Townhouse #20

                            Endicott, New York 13760


C1.        Defendant       NCAComp Inc.

           Owner:          Kevin Gregory

    Address:        (W) 14 Lafayette Square, Suite 700   (H) 107 Oakland Pl Apt2

                    Buffalo, New York  14203              Buffalo, NY 14222


 2.        Defendant:      Joleen M.  Bolger (Snowdon), Manager, NCAComp  Inc.

    Address:        (W) 14 Lafayette Square, suite 700   (H) 6557 Fairlane Dr.

                    Buffalo, New York 14203               Boston, New York 14025


3.         Defendant:      Dr. Anne M. Caulkins

    Address:        (W) 20-24 South Washington St.        (H) 21 Blackstone Ave.

                    Binghamton, New York 13903            Binghamton, New York 13903


4.         Defendant:      Dr. Ira Breite

           Address:         228 W82nd Street, Apt 1

                            New York, New York  10024


5.         Defendant:      Rene Barnes (Picirrili)

Address:        63 Atchison Road

Binghamton, New York 13905

D.      My disability is as follows:

The plaintiff was granted Social Security Disability (SSD) from the United States of America Social Security Administration in October of 1998 for Bi-lateral Sacralitis which has reached a point that he now has chronic bilateral Sacraliliac Cluneal Nerve inflammation. He also has bi-lateral hip bursitis with the left hip being replaced in 2011. He also has bilateral knee degeneration qualifying for injections and eventually surgery. He also has Ulcerative Colitis which requires that he take Mesalimine every day for the rest of his life so that he may not bleed out rectally. There are doctors who call this last issue NSAID Gastropathy. The Plaintiff shares this belief. He obtained his injuries as the result of an accident at work on 11/1/1995. He is a member of the protected class of workers permanently disabled as the result of an accident at work.

E.      The conduct complained of in this action involves:  RETALIATION   and   other   acts specified below.

F.                                      **FACTS**

1.      The plaintiff was first injured in an accident at work in November 1, 1995. The resultant nightmare that he has endured has recently involved the Lourdes Memorial Hospital Pain and Wellness facility. Brennan (plaintiff) began seeing the physicians at this location in January of 2018 after receiving excellent treatment at Lourdes Physical Therapy at Shipper's Road.

2.      Brennan was referred to Lourdes Pain and Wellness (LPW) by Dr. Federovich and first saw Dr. Therajirahj. First thing he says to the plaintiff is what do you need those crutches for? The plaintiff hadn't been judged by a doctor in a while.  Dr. T suggested an Injection into the plaintiff's Sacral-iliac (SI) joint.  The plaintiff receives SSD due to bilateral Sacralitis.  On January 15, 2018, the plaintiff went to receive an injection into one of his SI joints at Lourdes Hospital, He did, was treated like a second class citizen by Dr Thiaji (raj) (he has people call him raj, however the procedure notes have his name as Thiaji and no raj).  Dr. T's comments during procedure diminish whatever benefit Brennan received from injection and may be the reason for Thiaji's dismissal from Lourdes Memorial Hospital.  Dr. T. was co-site supervisor with Dr. Caulkins and the resultant dismissal from Lourdes as a result of his comment to Mr. Brennan upon information and belief may be one reason why she has done what she has done.

3.      As of this point the Plaintiff had been receiving medical treatment for his NYS Worker's Compensation injuries through NYS' s Special Funds Conservation Committee.   The plaintiff had been determined a Section 25a claimant as he is permanently disabled from an accident at work, despite being classified as temporarily disabled by  the New York State Worker's Compensation Board (WCB).  The plaintiff would opine this is done so the Board and Carrier can Surveille him.  He has been under surveillance since 1996.  Some of those early videos can be seen at McKiinnon Obannon's Channel on Youtube.  The plaintiff would opine that the Employer will never use edited video against him again or use it against him in court. All Evidence of injury from work accident has been edited out.   This criminal and fraudulent behavior is allowed per comp law or the plaintiff would assume so as he has tried to bring this criminality to the attention of the WCB since 1998 to zero avail.

4.      The plaintiff had been under the care or administration of Special Funds Conservation Committee.  There had been specific issues of questionable tactics used by this State/ quasi Insurance group which had been abated by the plaintiff in recent years; however in the Spring of 2018 his case was turned over to NCAComp. Inc.  His Claim Examiner was Manager, Jolene Bolger (Snowdon)  (JB).

5.      On December 14, 2018 the plaintiff was injected with Depomedrol into both SI joints by Dr. Anne Caulkins while he was taking Meloxicam and Voltaren Gel, both powerful NSAIDS.

6.      In January of 2019, the plaintiff was disgusted by his treatment at LPW with Dr. Anne Caulkins, specifically, however he continued with prescribed medicines.  This is the reason for the plaintiff's current medical malpractice complaint against Our Lady of Lourdes Pain and Wellness.  See Kevin Joseph Gabriel Brennan vs. Our Lady of Lourdes Memorial Hospital, Index No. CA2021001185.

7.      Also in January, the plaintiff experienced the worst episode of rectal bleeding he had ever had.  He was immediately concerned and went to the Lourdes Walk-in in Endicott, New York. The plaintiff saw Nurse Practitioner Samidol who agreed with Brennan to stop taking the Meloxicam, however there was never any mention of the Voltaren gel (Vg).  The plaintiff thinking that this stuff is ok.  The plaintiff began Vg in 2012 for use on his bilateral hip pain. His left hip is replaced which prevents injections in this area.  Hips were added to ANCR in January of 2011

8.      NP Samidol gave the plaintiff a prescription for Anusol, however Brennan did not have the $200.00 for the medication and instead purchased Preparation H.

10.     On February 10, 2019 the plaintiff filled his prescription for Voltaren Gel however the amount he usually took was doubled from two tubes to four. See Exhibit A as Brennan's prescription log at Lourdes Pharmacy on Shipper's Road.

11.     In February of 2019 the plaintiff continued to experience rectal bleeding; what he would come to know as blood mixed with stool.  This is not good and Plaintiff scheduled an appointment with Dr. Atif Saleem, the same Gastroenterologist plaintiff saw in 2016 for colonoscopy which identified bleeding hemorroid and diverticulitis.  All paid by the Worker's Compensation carrier/administrator, Special Funds Conservation Committee without any denial.

12.     The plaintiff had requested a new prescription from the provider Lourdes Pain and Wellness for Voltaren Gel (generic – diclofenac gel).  Without an appointment, Brennan has refilled his prescriptions in this way for decades.  Expecting to receive two tubes, the plaintiff was given an amount of Vg that was twice the amount he had been taking for several years.  The amount of Vg the plaintiff had been taking was 200mg and on February 10, 2019 he was given 400mg.  See Exhibit B as a letter, dated March 21, 2019, from the plaintiff to his comp case manager, Jolene Bolger.  Thanking her for the increase in his medication and reminding her of the importance of his gym membership.  At that time, the plaintiff thinks "Vg is the greatest thing for his hips and low back (SI Joints)".  Jolene Bolger knows what this medication can truly do, as does Dr. Anne Caulkins.  NCA also denied gym membership and plaintiff appealed.

13.     NYS Worker's Compensation Law and any prescription change must accompany either an appointment where the request was made or in writing from treating physician, in order for a claimant to change his prescription, especially double it, their physician must provide a written reason why the increase is necessary.  From the insurer's stand point the most important issue is the increase in cost.  The Plaintiff has never seen any notes explaining the need for increase as

there was never any appointment where claimant/plaintiff requested the change. The record of prescriptions that is Exhibit A has Brandy Benjamin as the physician who requested the increase. Brandy is a Nurse Practitioner and directly supervised by Dr. Caulkins

14.     In July of 2018 the plaintiff was granted use of Vg on his bilateral SI joint issue; however the dosage was to remain the same. In Appointment at that time, Dr. Caulkins stated, they may not increase due toxicity. Plaintiff believes Dr. Caulkins is thoroughly aware of what this medication can do.

14.     On February 26, 2019, Brennan had appointment with Dr. Saleem at Binghamton Gastroenterology in Binghamton, NY. Please see Exhibit C. as the result of the appointment and NYS WCB form  C-4 requesting a colonoscopy to determine the cause of Plaintiff's rectal bleeding. Jolene Bolger assisted the office staff with completing the form. (Exhibit C, pg 2)

15.     The insurer receives a copy of this form, as does the WCB.

16.     Insurer's representative and Brennan's claim examiner, JB, helped complete the form and did not respond as the form indicates is necessary because it wasn't completed properly, which can be a reason for denial. According to Comp Law if such a request is not authorized within a specific amount of time, the claimant IS authorized to get the procedure; however the insurer doesn't have to pay for it, thereby denying a claimant who doesn't have insurance to pay for such a procedure as the medical provider does not provide procedures for free. The plaintiff calls this Cost Shifting and it is a way the comp insurers force claimant's to acquire medically necessary procedures without paying for it.

17.     Upon information and belief, Dr. Caulkins was notified of the reason for Brennan filing his medical malpractice in February of 2019. This is also when Dr. Caulkins doubled Brennan's

prescription for what turns out to be a powerful NSAID which contains the chemicals known to cause deterioration of the mucosal walls of the colon.

18.     The plaintiff did not have the procedure and continued to receive and administer the Vg to his lower back.  He had stopped all other medication he had been taking except for the Vg as he had no idea that this medication was a topical form of the NSAIDS he had been taking from 1996 until 2017 when he quit all pills due to rectal bleeding, on his own.

19.     The case manager Jolene Bolger authorized Brennan's prescription change and intentionally failed to identify the proper procedure for completing the form known as a C-4.

20.     The Insurer/carrier/administrator NCAComp, Inc. where Ms. Bolger is employed denies claimant's request's for a medical procedure by not explaining how to properly complete a form to request the procedure.

21.     Jolene Bolger authorizes the doubling of the claimant's medicine without a reason but intentionally fails to grant authorization for a form that was filled out incorrectly which was/is intended to determine the cause of the problem.  The Claimant did DO what he had to do find all this out.

22.     First he requested a hearing to discern why the procedure was not authorized, filing all the necessary forms to finally get a hearing in May of 2019.   At the hearing the judge told him what was missing.  All the while He has blood mixed with his stool and continues to take Vg at an increased dosage.   The hearing also entailed issues such as gym membership and mileage reimbursement.

23.     The claimant was also requesting mileage reimbursement and his case was turned over to Mr. Christopher Gordon with NCAComp Inc. and is directly supervised by Ms. Bolger.

24.    Plaintiff had been working directly with the Gastro provider to ensure the form would be properly filled out. See Exhibit D as the completed and authorized C-4 (by Mr. Gordon) however there are notes which indicate the form is granted as it is causally related, however the form may not be completed correctly and will be disputed, which might as well be a denial. The plaintiff would opine the insurer never had any intention of paying for Brennan's procedure.

25.    Authorization of this C-4 was not denied despite as the original mistake was corrected and whatever Mr. Gordon identifies as incorrect is never brought to light.

26.    Brennan received Health Insurance for the first time in twenty years on June 1st, 2019. The plaintiff's new health insurance was billed. The actions of NCAComp  prove the "Cost shifting" theory, which is meant to deny a claimant medical treatment so the company does not have to pay for it. In this case, the plaintiff believes the employees of NCAComp Inc are paid to deny claimant's proper requested medical treatment however the plaintiff believes the denial of due process both procedural and substantive are called into for their egregious actions may have led to the permanent injury to the colon and intestines called Ulcerative Colitis.

27.    Brennan scheduled his first colonoscopy for June 12, 2019. That day he was told he had Ulcerative Colitis and would have to take medicine called Mesalamine for the rest of his life. That night as he was putting the Vg on his SI joints which happen to be inches away from his colon, he thought "let me look at the label for this".  So he did and it clearly states to stop use if rectal bleeding occurs.

26.    The next day the Claimant started taking Mesalimine which cost $450.00/ mo at that time and stopped putting the Vg on his back or anywhere on his body ever again. The rectal bleeding stopped immediately the following day.

27.     For the next several months the plaintiff "fought" in Worker's compensation court to have his Ulcerative Colitis (UC) included to his Accident, Notice and Causal Relationship (ANCR) which is the listed injuries associated with the claimant's original injury.

28.     In December of 2019, Mr. Mencini attorney for claim administrator, NCAComp called the plaintiff to offer a settlement of $10,000.00 for all of his accident related injuries.   For multiple reasons, the plaintiff refused Mr. Mencini.

29.     Upon information and belief all of these actions have been identified by the New York State Worker's Compensation Board.  See Exhibit E as a letters from the plaintiff to the carrier and emailed to Rene Barnes.  Rene Barnes has access to the information that the plaintiff was being treated for rectal bleeding and may know that the Voltaren Gel was being doubled and did nothing.  She would know that the plaintiff was being denied necessary medical treatment however the board would not want the employer/ carrier/ administrator to be responsible for injuries caused by medication paid for by the Board's edict.

30.     Also in December, Brennan receives an  "ex parte" " record review only""Independent Medical Exam" from Dr. Ira Breite, Gastroenterologist.  In it he made several false claims, entirely leaving out the powerful NSAID Meloxicam (Mobic), briefly mentioning the diclofenac gel (Vg)  and claiming Brennan's left hip surgery (4/2011 surgery date) was not causally related. The most outrageous of all was Dr. Briete's determination that Ulcerative Colitis (UC) may not be a disease and with twisted logic there can be no medicine to treat it. Please see Exhibit F as a request for Independent Medical Exam by Chris Gordon for Dr. Breite.

31.     The plaintiff would opine that these outrageous statements and affirmation are all in service to the once good doctor's payor, the NCA.  Dr. Briete would know that his statements

were false and in making these false statements he was undermining the ability of the plaintiff to obtain adequate medical treatment from the employer for causally related medical treatment.

32.     Dr. Breite does know that UC is a disease and can be a very bad one, with or without medication.  He is clearly lying for his payor, NCAComp, Inc. who pay another company which Dr. B is allegedly a private contractor. Another violation of the plaintiff's Procedural and Substantive due process rights as guaranteed by the US Constitution as well as Fourth and Seventh amendment violations.

33.     Furthermore, in testimony from Dr. Briete he states his affirmation under oath to the lies written in his report.  All of which were summarily dismissed by the plaintiff in WCB hearing dated 2.2.21.  Transcript is available.

34.     All of these actions have occurred under the color of New York State Worker's Compensation Law.

35.     The claimant is permanently injured and the Worker's Comp Board of NY wishes he remain not disabled.  Only last year was he granted 45% partial permanent disability for his left hip from surgery in April of 2011.  Added to Brennan's ANCR in Jan of 2011, it was initially identified without objective medical evidence as Aseptic Necrosis in 1997, allowing the Employer to arbitrarily slash his WCB benefit from $338.60 per week to 169.30 less $110 per week for child support leaving him with less than $60.00 per week to live or die but denial of due process in 1997 not what this complaint if about.


G.                              **CAUSES OF ACTION**


                         **FIRST CAUSE OF ACTION**

Dr. Anne Caulkins and Jolene Bolger (Mckown) filled the claimant's prescription at double the previous amount without a medical reason.  This increase was authorized by Jolene Bolger who had just failed to properly complete the medical procedure form to determine cause of new rectal bleeding.  The continuation of the medication allowed for the continuation of bleeding.  It says it right on the label.  Doctors and for sure Insurance Claim Administrators don't want to add to an injured worker's ANCR and intentionally fail to address situations whereby the medications paid for by WCB cause additional problems.  Dr. Caulkins intentionally prescribed twice the amount of medication, knowing the dangers of this medication and its affect on the colon.  Caulkins was notified in February that Brennan had an episode of rectal bleeding and doubles the medication which may be the proximate cause of his injuries. She did this in retaliation for Brennan's notification of dissatisfaction with Dr. Caulkins actions.

## SECOND CAUSE OF ACTION

Jolene Bolger intentionally denied the plaintiff necessary medical treatment by intentionally failing to provide proper information when said information was requested.  Under the color of New York State Worker's Compensation law, Bolger told provider wrong info, knowing the request for authorization would be denied because she provided the incorrect information.  The denial of medical treatment was a violation of the claimant's exclusive remedy right to medical treatment in exchange for not filing a complaint against his employer. Bolger denies medical treatment while authorizing a doubling of a powerful prescription medication without a reason for the increase.

### THIRD CAUSE OF ACTION

NCAComp through its employees denied the claimant/plaintiff his doctor prescribed gym membership in violation of New York State Worker's Compensation Law, where correctly requested treatment such as a gym membership is authorized for a hip injury.   Under color of New York State Worker's Compensation law the plaintiff was denied his constitutional rights.

### FOURTH CAUSE OF ACTION

The claimant has repeatedly been requesting the Board and various doctors to categorize his injuries as permanent.  At appointment in August 28, 2018, Brennan gave Caulkins a form whereby she could identify Brennan's bilateral sacralitis as permanent, allowing him to get out from under the persecution of the Comp Board with what is known as a Section 32.  In audio recording made by Brennan after waiting 45 minutes, Dr. Caulkins stated that she would complete the form.  Instead the notes from that day claim Brennan's left hip replacement was not causally related.  When the claimant sees falsities like this he opines this Doctor is trying to reduce or minimize his ANCR.  Couple this with statement from Dr. Briete he becomes disgusted.

### FIFTH CAUSE OF ACTION

Dr. Ira Breite owes a duty to his profession to do no harm or make false diagnosis.  The Plaintiff is/was never a patient of Dr.Briete, however, to say that Ulcerative Colitis is not a disease and therefore there can be no medication to treat it is preposterous and proof that this man has violated his Hippocratic oath in service to  his payor the Employer/ comp board/ insurer and in violation of the plaintiff's constitutional rights.  Dr. Ira Breite has violated Brennan constitutional right to due process and equal access to medical treatment.

## SIXTH CAUSE OF ACTION

Rene Barnes has been emailed many documents the plaintiff mailed to various carriers over the years. See Exhibit E as copies of letters sent to the Board and email to Ms. Barnes. Having access to all of Brennan's file and the many complaints regarding obvious obstacles to receiving the medical treatment agreed to by the NYS WCB in return for the injured worker not filing a complaint against their employer, Barnes knew and knows that Brennan has been grossly denied his right to due process and access to accommodations, not too mention the fact that he is permanently disabled from an accident at work the Board refuses to identify as permanent. This fact alone is a gross violation of the claimant's right to life, liberty and the pursuit of happiness. It is an intentional infliction of emotional distress meant to intimidate the injured worker into giving up their rightful claim.

## SEVENTH CAUSE OF ACTION

Under color of New York State Worker's Compensation Law, the claim administrator provided incorrect information to the medical provider, knowing authorization would be denied. All meant to deny both procedural and substantive due process. NCA intentionally denied the Plaintiff the medical procedure available to other similiarly situated injured workers. NCA's intentional denial of authorization is a gross violation of the covenant of "Exclusive Remedy".

H.                              **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff requests that this Court grant the following relief:

1. NCAComp Inc. intentionally denied the claimant medical treatment and mileage reimbursement in violation of the plaintiff's constitutional rights on multiple

occasions.  Plaintiff requests $120,000.00 US for each violation committed by its employees and subcontractors.

2. Dr. Anne Caulkins violated her very oath to do NO Harm when she increased the plaintiff's medication without an appointment or reason.  Her actions are the proximate cause of the claimant's Ulcerative Colitis therefore she owes the plaintiff $120,000.00US for each violation of the plaintiff's constitutional rights.

3. Jolene Bolger owes the Plaintiff $120,000.00US for each violation and damages.  In the course of her usual business she intentionally denied the plaintiff the medical procedure which may have determined the cause and diagnosis for rectal bleeding while authorizing the doubling of Plaintiff's medication which is known to cause rectal bleeding without reason.

4. Dr. Ira Briete owes the Plaintiff $120,000.00US for each violation and damages.  Dr. Breite intentionally gave false testimony at a Worker's Compensation Hearing in order to deny the claimant medical treatment.

5. Ms. Rene Barnes owes the Plaintiff $120,000.00US for each violation and damages.  Ms. Barnes (Picirrili) has been made aware of the multitude of infringements upon the Plaintiff's Constitutional rights for over two decades.  Most recently every mileage reimbursement by RCA was delayed several months causing great hardship upon the plaintiff, such that he on two separate occasions requested a fine in the amount of $1000 (all proper by WCL) for the intentional delay.  They never did.

As the plaintiff is a member of the protected class of Disabled Americans and as such has been a recipient of Social Security Disability since October 8, 1998, which has saved the life of

his children not to mention himself, all compensatory damages and monetary amounts for violations are all multiplied by three.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:        March 25, 2022

Kevin Joseph Gabriel Brennan
319 Exchange Avenue
Townhouse #20
Endicott, New York  13760

## VERIFICATION

STATE OF NEW YORK

COUNTY OF BROOME

Kevin Joseph Gabriel Brennan  being duly sworn and says that deponent is the *In Propria Persona* plaintiff in the above-encaptioned proceeding, that he has read the forgoing  and knows the contents thereof, that the same is true to deponent's knowledge, except as to matters therein stated upon information and belief, which matters deponent believes to be true.

Kevin J. G. Brennan
319 Exchange Ave.
Townhouse #20
Endicott, New York 13760
 607-624-4436

Sworn to before me this
25th day of March, 2022

Notary Public

CONNIE PALMER
Notary Public - State of New York
No. 01PA6089150
Qualified in Broome County
My Commission Expires March 17, 2023