UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KEVIN JOSEPH GABRIEL BRENNAN,

                        Plaintiff,

v.

NCACOMP INC., Owner Kevin Gregory;                    3:22-CV-0127
JOLEEN M. BOLGER, (Snowdon) Manager,                  (GTS/ML)
NCA Inc.; DR. ANNE M. CAULKINS;
DR. IRA BREITE; and RENE BARNES
(Picirrili),

                        Defendants.

_____

APPEARANCES:                                          OF COUNSEL:

KEVIN JOSEPH GABRIEL BRENNAN
  Plaintiff, *Pro Se*
319 Exchange Avenue, Townhouse #20
Endicott, New York 13760


MIROSLAV LOVRIC, United States Magistrate Judge


## **ORDER and REPORT-RECOMMENDATION**

The Clerk has sent this *pro se* complaint together with an amended complaint, application

to proceed *in forma pauperis*, and supplemental information to the *in forma pauperis* application

filed by Kevin Joseph Gabriel Brennan ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2, 4,

5.)  For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No.

2) and recommend that Plaintiff's Amended Complaint (Dkt. No. 5) be dismissed in its entirety

(1) in part with leave to amend, and (2) in part without leave to amend.

I.      **BACKGROUND**

On February 10, 2022, Plaintiff commenced this action by the filing of a Complaint alleging that his rights were violated by defendants NCAComp Inc., Joleen Bolger, Dr. Anne M. Caulkins, Dr. Ira Breite, and Rene Barnes (collectively "Defendants").  (Dkt. No. 1.)  On March 25, 2022, Plaintiff filed an amended complaint as of right, which supersedes his original complaint.  (*See* Dkt. No. 5 [Am. Compl.]); *Int'l Controls Corp v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.").  Thus, presently before the undersigned for review pursuant to 28 U.S.C. § 1915, is Plaintiff's Amended Complaint.

Plaintiff alleges that he is disabled based, at least in part, on an injury he sustained at work on November 1, 1995.  (*See generally* Dkt. No. 5.)

Plaintiff alleges that "in the Spring of 2018" his workers' compensation case was "turned over to NCAComp. Inc." and Defendant Bolger was assigned as his claim examiner.  (*Id*.)

Plaintiff alleges that on December 14, 2018, he was injected with Depomedrol by Defendant Caulkins while he was also taking Meloxicam and Voltaren Gel.  (*Id.*)  Plaintiff alleges that in January 2019, he "experienced the worst episode of rectal bleeding he had ever had."  (*Id*.)  Plaintiff alleges that due to his rectal bleeding, he went to "the Lourdes Walk-in," where he was directed to stop taking the Meloxicam but the Voltaren Gel was not discussed. (*Id*.)

Plaintiff alleges that on February 10, 2019, he filled his prescription for Voltaren Gel, but the amount that he was usually prescribed doubled "from two tubes to four."  (*Id*.)  Plaintiff alleges that, pursuant to New York State Workers' Compensation Law, any prescription medication change must be accompanied by either an appointment where the change was

requested or a written order from a treating physician explaining why the change was necessary. (*Id*.) Plaintiff alleges that he did not request a change in the amount of Voltaren Gel and he has not seen any written order explaining a need for the increase. (*Id*.)

Plaintiff alleges that on February 26, 2019, he was examined by Dr. Saleem, who ordered a colonoscopy to determine the cause of Plaintiff's rectal bleeding. (*Id*.) Plaintiff alleges that Defendant Bolger "assisted the office staff" at Dr. Saleem's office "with completing the [C-4] form." (*Id*.) Plaintiff alleges that he did not have the colonoscopy procedure because his request through workers' compensation was not approved and he did not have health insurance. (*Id*.)

Plaintiff alleges that, at some point in time, due to the rectal bleeding, on his own accord, he stopped taking all of the other medication he was prescribed except the Voltaren Gel. (*Id*.)

Plaintiff alleges that on June 1, 2019, he obtained health insurance. (*Id*.) Plaintiff alleges that on June 12, 2019, he scheduled his first colonoscopy, and was diagnosed with ulcerative colitis, which requires him to take Mesalamine for the rest of his life. (*Id*.) The same day, Plaintiff alleges that he applied the Voltaren Gel and looked closely at the container, which contained a warning to discontinue use if rectal bleeding occurred. (*Id*.) Plaintiff alleges that he immediately ceased use of Voltaren Gel and began taking Mesalimine, and the rectal bleeding stopped the following day. (*Id*.)

Plaintiff alleges that Voltaren Gel is "a powerful NSAID which contains the chemicals known to cause deterioration of the mucosal walls of the colon." (*Id*.) Plaintiff alleges that Defendant Caulkins was aware of the risks associated with Voltaren and that in July of 2018, she stated that his Voltaren Gel dosage should not be increased due to toxicity. (*Id*.) Plaintiff alleges that he filed a medical malpractice lawsuit in New York State court against Defendant Caulkins, and that in retaliation, she improperly doubled his prescription for Voltaren Gel. (*Id*.)

Plaintiff alleges that Defendant Bolger improperly authorized his Voltaren Gel prescription change but failed to authorize the colonoscopy procedure. (*Id*.)

Plaintiff alleges that Defendant NCAComp and its employees intentionally deny medical treatment so that it does not have to pay for the treatment. (*Id*.)

Plaintiff alleges that Defendant Barnes is associated with the New York State Workers' Compensation Board and was aware that Plaintiff was being treated for rectal bleeding, that his Voltaren Gel prescription was doubled, and took no action to protect him. (*Id*.)

Plaintiff alleges that in December—of an unspecified year—he received a report completed by independent medical examiner Defendant Breite, which included several false claims and omitted significant information. (*Id*.)

Based on these factual allegations, Plaintiff appears to assert the following seven causes of action: (1) a claim that Defendant Caulkins retaliated against him by improperly doubling his prescription for Voltaren Gel after he filed a medical malpractice suit against her, and that Defendant Bolger authorized the improper increased prescription; (2) a claim that Defendant Bolger intentionally denied Plaintiff's necessary medical treatment by failing to provide information when requested and then providing inaccurate information; (3) a claim that Defendant NCAComp, through its employees, denied Plaintiff his prescribed gym membership in violation of New York State Workers' Compensation Law; (4) a claim that Defendant Caulkins falsified records by stating that Plaintiff's left hip replacement was not causally related to his work injury; (5) a claim that Defendant Breite violated his Hippocratic oath by stating that ulcerative colitis is not a disease, which caused violations of Plaintiff's "constitutional right to due process and equal access to medical treatment"; (6) a claim that Defendant Barnes has been e-mailed "many documents" and knows that Plaintiff "has been grossly denied his right to due

4

process and access accommodations" and that he is permanently disabled but the Workers'

Compensation Board refuses to identify him as such, which is a "gross violation of [his] right to

life, liberty, and the pursuit of happiness" and an intentional infliction of emotional distress; and

(7) a claim that pursuant to New York Workers' Compensation Law, Defendant NCAComp

intentionally denied Plaintiff a medical procedure, which resulted in denial of his procedural and

substantive due process rights and was a "gross violation of the covenant of 'Exclusive

Remedy.'" (*Id.*)

As relief, Plaintiff seeks $120,000.00 in damages from each of Defendants and treble

damages pursuant to the Americans with Disabilities Act. (*Id.*)

## II.   PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[1]  After reviewing Plaintiff's *in

forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.

Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[2]

---

[1]     The language of that section is ambiguous because it suggests an intent to limit
availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1)
(authorizing the commencement of an action without prepayment of fees "by a person who
submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts
have construed that section, however, as making *in forma pauperis* status available to any litigant
who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed.
Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]     Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been
granted, he is still required to pay fees that he may incur in this action, including copying and/or
witness fees.

### III.    LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.    Claims Pursuant to 42 U.S.C. § 1983

To the extent that Plaintiff attempts to assert any constitutional claims, the Court construes those claims as made pursuant to 42 U.S.C. § 1983.  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks omitted).  "A plaintiff pressing a claim of [a] violation of his constitutional rights under § 1983 is thus required to show state action." *Fabrikant*, 691 F.3d at 206 (internal quotation marks omitted).  "State action requires *both* . . . the exercise of some right or privilege created by the State . . . *and*" the involvement of "a person who may fairly be said to be a state actor." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and brackets omitted).

There is no single test that is determinative of whether a private person or entity may be a state actor, but rather a host of factors. *Baum . N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428 (N.D.N.Y. 2011) (Treece, M.J.).  A state actor may be found when: (1) "[the challenged activity] results from the State's exercise of coercive powers"; (2) "the State provides significant encouragement, either overt or covert . . . or when a private actor operates as a willful participant

in joint activity with the State or its agents"; (3) "it is controlled by an agency of the State;" (4) "it has been delegated a public function by the State [known as the public function test]"; or (5) "it is entwined with governmental policies or when government is entwined in its management or control[.]" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001) (citations, quotation marks, and alterations omitted).[3]

Here, Defendants ostensibly are private actors. However, in the interest of reading Plaintiff's Amended Complaint "liberally and interpreted to raise the strongest arguments that [it can] suggest," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), the Court considers whether Defendants' alleged activities establish "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be treated as that of the State itself.'" *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiff does not allege facts plausibly suggesting that the state exercised coercive power over Defendants. Therefore, the Court considers the joint-activity and public-function tests.

"The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [state].'" *Forbes v. City of New York*, 05-CV-7331, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck*

---

[3]     On occasion, these criteria have been stated differently but the impact remains the same:

> The conduct of private actors can be attributed to the State for [§ 1983] purposes if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State.

*Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

*Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)).  "A private actor can only be a willful participant in joint activity with the State or its agents if the two share some common goal to violate the plaintiff's [constitutional] rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (internal citations omitted).  Here, Plaintiff fails to allege facts plausibly suggesting the existence of a conspiracy or a "prearrangement" between Defendants and the state.  As a result, I find that Plaintiff fails to allege facts plausibly suggesting joint action.  *See Brignardello v. Las Vegas Metro Police Dep't*, 06-CV-0855, 2006 WL 3308428, at *2-3 (D. Nev. Nov. 13, 2006) (finding that the complaint "failed to set forth any facts showing that [the third-party insurance administrators] conspired with [the Las Vegas Metro Police Department] to deprive [the plaintiff] of his constitutional rights" and thus, failed to allege "'joint action with state actors to violate' his constitutional rights.").

Under the public-function test, "a private entity may be considered a state actor when it exercises a function 'traditionally exclusively reserved to the State.'" *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019).  "The [Supreme] Court has stressed that 'very few' functions fall into that category." *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1929 (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)).  Public functions may include running elections and operating a company town but not running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, or supplying electricity. *Id.*

Here, Plaintiff fails to allege facts plausibly suggesting that Defendants perform a public function.  Neither the provision of medical services nor the administration of insurance payments in connection with state workers' compensation system are functions traditionally and

exclusively exercised by the government. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 529 U.S. 40, 55-57 (1999) (holding that private companies' administration of insurance payments in connection with state workers' compensation system was not state action); *DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69-70 (E.D.N.Y. Aug. 29, 2019) (finding that "[n]either the provision of chiropractic services nor the issuance of medical reports pursuant to FECA is a function traditionally and exclusively exercised by government."); *Peterec-Tolino v. Ace Am. Ins. Co.*, 20-CV-5354, 2020 WL 5211045, at *4-5 (S.D.N.Y. Aug. 28, 2020) (holding that independent medical examiners and a private insurance company are not state actors for claims pursuant to 42 U.S.C. § 1983).

Therefore, I find that drawing all reasonable inferences and construing the Amended Complaint liberally, it fails to allege facts plausibly suggesting that Defendants are state actors for purposes of liability pursuant to 42 U.S.C. § 1983. As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983, be dismissed for failure to state a claim.

In the alternative, I recommend that to the extent that Plaintiff asserts a claim pursuant to the equal protection clause, that claim be dismissed for failure to state a claim.

Under the Equal Protection Clause, a state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. At its core, equal protection prohibits the government from treating similarly situated persons differently. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Services, Inc. v. Town of East Hampton*, 192 F.3d 329, 335 (2d Cir. 1999). Vague or nonspecific allegations are insufficient to make out an equal protection claim.

In order to claim that the conduct of Defendants violate Plaintiff's equal protection rights, he must allege that:

> (1) . . . compared with others similarly situated, [he] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [him].

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

Plaintiff appears to assert an equal protection claim under the "class of one" theory. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008). Under this theory, a plaintiff must show that he was "intentionally treated differently from other similarly-situated individuals without any rational basis." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). Additionally, "an extremely high degree of similarity between" Plaintiff and the person with whom he compares himself must be alleged. *Clubside, Inc.*, 468 F.3d at 159 (citing *Neilson*, 409 F.3d at 104).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff was treated differently from other similarly-situated individuals without any rational basis. As a result, I recommend that, in the alternative, Plaintiff's equal protection claim against Defendants be dismissed for failure to state a claim.

**B.    Claims Pursuant to the ADA**

To the extent that Plaintiff intended to assert claims pursuant to the ADA, I recommend that those claims be dismissed for failure to state a claim upon which relief may be granted.

The Amended Complaint includes no allegations of discrimination based on Plaintiff's disability. (*See generally* Dkt. No. 5.) In addition, construing the Amended Complaint liberally,

as the Court must, Plaintiff failed to allege facts plausibly suggesting claims pursuant to Title II, Title III, or Title V of the ADA.[4]

### 1. Title II of the ADA

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected,* 511 F.3d 238 (2d Cir. 2004)). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).

A "qualified individual" is

---

[4]    Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has neither alleged that he was employed by Defendants, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001)) ("'Title I of the ADA expressly deals with th[e] subject' of employment discrimination."). Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).

> an individual with a disability who, with or without reasonable
> modifications to rules, policies, or practices, the removal of architectural,
> communication, or transportation barriers, or the provision of auxiliary
> aids and services, meets the essential eligibility requirements for the
> receipt of services or the participation in programs or activities provided
> by a public entity.

42 U.S.C. § 12131(2).  A qualified individual can base a discrimination claim on any of "three

available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and

(3) failure to make a reasonable accommodation."  *Tsombanidis v. West Haven Fire Dep't*, 352

F.3d 565, 573 (2d Cir. 2003).

The public entities defined in the ADA are state or local governments and their

instrumentalities.  42 U.S.C. § 12131(1).  Private entities are not subject to the provisions of Title

II even if they receive government funding.  *Wilshire v. L&M Dev. Partners*, 20-CV7998, 2022

WL 847067, at *3 (S.D.N.Y. Mar. 22, 2022) (citing *Wiltz v. N.Y. Univ.*, 19-CV-3406, 2019 WL

8437456, at *7 (S.D.N.Y. Dec. 23, 2019), *report-recommendation adopted by*, 2020 WL 614658

(S.D.N.Y. Feb. 10, 2020) (collecting cases on private entities receiving government funding not

being subject to Title II of the ADA)).

Here, the Amended Compliant is devoid of factual allegations plausibly suggesting that

Defendants are public entities.  As set forth above in Part IV.A. of this Order and Report-

Recommendation, the Amended Complaint fails to allege facts plausibly suggesting that

Defendants are state actors.  In addition, the Amended Complaint fails allege facts plausibly

suggesting that Plaintiff was unable to access programs due to his disability, how his disability

prevented him from accessing those programs, or what accommodations he sought and was

denied by Defendants.  (*See generally* Dkt. No. 5.)

Moreover, "[w]hen a private individual seeks damages under Title II of the ADA, the

Second Circuit requires the plaintiff to 'establish that the Title II violation was motivated by

either discriminatory animus or ill will due to disability.'"  *Day v. Warren*, 06-CV-0155, 2008 WL 474261, at *4 (D. Conn. Feb. 7, 2008) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001)).  The Amended Complaint fail to allege facts plausibly suggesting discriminatory animus or ill will towards Plaintiff's alleged disability or disabilities.  (*See generally* Dkt. No. 5.)

As a result, I recommend that Plaintiff's ADA claims under Title II be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.  *See Hill v. LaClair*, 20-CV-0441, 2020 WL 2404771, at *8 (N.D.N.Y. May 11, 2020) (Hurd, J.) (dismissing ADA Title II claims "pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.").[5]

### 2.  Title III of the ADA

Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §

---

[5]    In the alternative, to the extent that Plaintiff attempts to assert ADA Title II claims against Defendants Bolger, Caulkins, Breite, and Barnes in their individual capacities, I recommend that those claims be dismissed because "individuals cannot be held liable under the ADA."  *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

12182(a).  Doctors' offices and hospitals are considered "public accommodations" for the purposes of the ADA.  42 U.S.C. § 12181(7)(F) (defining "public accommodation" to include "a . . . professional office of a health care provider [and] hospital").

Discrimination on the basis of disability in public accommodations involves, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."  *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(b)(2)(A)(iii)); *see also Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii) ("The Act defines discrimination to include . . . 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods [and] services . . . to individuals with disabilities, unless . . . such modifications would fundamentally alter the nature of such goods [and] services.'")).

The Amended Complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff.  Although the Amended Complaint appears to allege that: (1) Defendant NCAComp denied Plaintiff's claims in an effort to save money, (2) Defendant Caulkins rendered inadequate medical care, (3) Defendant Bolger knew of Defendant Caulkins' improper medical care and inappropriately approved Plaintiff's prescription change, (4) Defendant Breite's independent medical report included inaccurate information, and (5) Defendant Barnes knew of Defendant Caulkins' improper medical care, it does not allege that Defendants took these actions for the purpose of discriminating against Plaintiff because of an alleged disability.

As a result, I recommend that Plaintiff's disability discrimination pursuant to Title III of the ADA be dismissed for failure to state a claim.

In the alternative, I recommend that Plaintiff's Title III claim be dismissed because Plaintiff seeks only monetary damages, and the sole available remedy under Title III of the ADA is injunctive relief. 42 U.S.C. § 12188(a)(1). "Monetary relief . . . is not available to private individuals under Title III of the ADA." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also Krist.* 688 F.3d at 94 (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages"). "Since [P]laintiff seeks only monetary relief with respect to [his] ADA claims", the Amended Complaint "fails to state a plausible claim for relief under Title III of the ADA." *Sandler v. Benden*, 15-CV-1193, 2016 WL 9944017, at *16 (E.D.N.Y. Aug. 19, 2016), *aff'd*, 2017 WL 5256812 (2d Cir. Nov. 13, 2017).

Here, Plaintiff has not requested injunctive relief and thus has failed to state a claim upon which relief may be granted. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990) (*quoting Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). As a result, I recommend that, to the extent that Plaintiff intended to assert claims pursuant to Title III of the ADA, those claims be dismissed.

### 3. Title V of the ADA

42 U.S.C. § 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." For an ADA retaliation claim, a plaintiff must plead the following: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse . . . action; and (4) a causal connection between the

protected activity and the adverse . . . action." *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

"Protected activity is action taken to protest or oppose statutorily prohibited discrimination." *Shannon v. Credit Agricole Sec. (USA), Inc.*, 17-CV-0667, 2021 WL 1063183, at *9 (S.D.N.Y. Mar. 19, 2021) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)). "Protected activities include requests for reasonable accommodations." *Wells v. Achievement Network*, 18-CV-6588, 2021 WL 810220, at *11 (S.D.N.Y. Mar. 2, 2021) (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff engaged in any protected activity. Instead, Plaintiff appears to allege that he filed a medical malpractice lawsuit against Defendant Caulkins in February 2019. (Dkt. No. 5 at 7-8.) This is insufficient to allege that Plaintiff "has opposed any act or practice made unlawful by" the ADA. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."); *Weinstein v. Miller*, 21-CV-4543, 2021 WL 3038370, at *7 (S.D.N.Y. July 15, 2021) (dismissing the plaintiff's complaint where she failed to allege facts "suggesting that she made [a] complaint of disability discrimination or that any Defendant discriminated or retaliated against her because of any such complaint."); *Smith v. City of New York*, 15-CV-4493, 2016 WL 4574924, at *10 (S.D.N.Y. Sept. 1, 2016) (finding that the plaintiff's "objection to being subjected to the disrobement policy does not constitute a protected activity because [the plaintiff] cannot show an objectively reasonable basis for believing that the policy violates the ADA.").

Moreover, Plaintiff has not alleged any adverse actions that would be sufficient to state a claim of retaliation. "Actions are materially adverse if they are harmful to the point that they

could well dissuade a reasonable [person] from making or supporting a charge of discrimination [or retaliation]." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). It is well established that complaints about medical treatment are generally insufficient to state a claim under the ADA. *See United States v. Univ. Hosp.*, 729 F.2d 144, 156-60 (2d Cir. 1984); *see also Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab[ilitation] Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions.") (citing cases). Here, the undersigned simply will not second-guess Defendant Caulkins' alleged decision to change Plaintiff's prescription quantity. *See Smith*, 2016 WL 4574924, at *11 (finding that the plaintiff failed to allege a claim of retaliation pursuant to the ADA based on allegations that the plaintiff disagreed with the decisions made by the defendant hospital about the plaintiff's care).

As a result, I recommend that, to the extent Plaintiff intended to assert claims pursuant to Title V of the ADA, those claims be dismissed for failure to state a claim upon which relief may be granted.

In the alternative, I recommend that Plaintiff's claim be dismissed because Title V "does not provide for punitive or compensatory damages under the ADA." *Jones v. Volunteers of Am. Greater New York*, 20-CV-5581, 2022 WL 768681, at *6 n.8 (S.D.N.Y. Mar. 14, 2022) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269-70 (9th Cir. 2009) (holding "punitive and compensatory damages are not available for ADA retaliation claims."); *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961 (7th Cir. 2004), *cert. denied*, 542 U.S. 932 (2004) (holding that a plaintiff can only recover equitable relief for a retaliation claim under the ADA); *Shipman v. New York State Office of Persons with Developmental Disabilities*, 11-CV-2780, 2012 WL 897790, at *9 (S.D.N.Y. Mar.

12, 2012) (even in the retaliation context, "individuals cannot be held liable for money damages under the ADA in either their personal or official capacities."), *report and recommendation adopted* 2012 WL 3704837, at *3 (S.D.N.Y. Mar. 26, 2012) (money damages unavailable under the ADA)).

### C.    State Law Claims

Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent that Plaintiff has asserted any state law claims, the Court decline to exercise jurisdiction over those claims.  *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

In the alternative, I recommend that Plaintiff's state law claims be dismissed for failure to state a claim.

### 1.    Intentional Infliction of Emotional Distress ("IIED")

New York has adopted the Restatement (Second) formulation of IIED.  *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115 (N.Y. 1993).  "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."  Restatement (Second) of Torts § 46(1) (1965).  This broad definition, is "both a virtue and a vice."  *Howell*, 81 N.Y.2d at 122.  "The tort is as limitless as the human capacity for cruelty. The price for this flexibility in redressing utterly reprehensible behavior, however, is a tort that, by its terms, may overlap other areas of the law, with potential liability for conduct that is otherwise lawful."  *Id*.  Therefore, IIED "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not."  *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted).

Under New York law, then, a claim for IIED requires a showing of: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell*, 81 N.Y.2d at 121.

Under New York law, although "[t]he standard of outrageous conduct is strict, rigorous and difficult to satisfy . . . , that is not the case when there is a deliberate and malicious campaign of harassment or intimidation."  *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (N.Y. App. Div. 1st Dep't 2018) (internal quotations omitted).  To be sure, "it is manifestly neither practical nor desirable for the law to provide[ ] a remedy against any and all activity which an individual might find annoying."  *Nader v. Gen. Motors Corp*., 25 N.Y.2d 560, 569 (N.Y. 1970).  At the same time, "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation," IIED provides a remedy.  *Nader*, 25 N.Y.2d at 569.

21

"In other words, under New York law, the proper inquiry is not merely whether each individual act might be outrageous.  Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019).

The Amended Complaint fails to allege facts plausibly suggesting that Defendants engaged in extreme and outrageous conduct.  As a result, in the alternative, I recommend that Plaintiff's claim for IIED be dismissed for failure to state a claim upon which relief may be granted.

### 2.    Hippocratic Oath

"[V]iolating the Hippocratic oath does not state a claim upon which relief can be granted."  *See Moore v. St. John's Hosp.*, 15-CV-4177, 2016 WL 1735769, at *3 (C.D. Ill. Mar. 23, 2016); *accord Brady v. Halawa Corr. Facility Med. Unit Staff*, 05-CV0144, 2006 WL 2520607 (D. Hawaii Aug. 29, 2006); *see also Rose v. Borsos*, 17-CV-0204, 2018 WL 3967673, at *12 (E.D. Tenn. Aug. 17, 2018) (dismissing the plaintiff's claim for violation of the Hippocratic Oath because "there are no federal . . . civil causes of action for violations of professional ethics.").

As a result, I recommend that Plaintiff's claim be dismissed for failure to state a claim.[6]

---

[6]    Even if the Court construed Plaintiff's violation of the Hippocratic Oath claim as a medical malpractice claim, a medical malpractice claim is pursuant to New York law.  *See Buchanan v. Hesse*, 21-CV-0649, 2022 WL 829163, at *1 (Mar. 21, 2022) (concluding that a medical malpractice claim is governed by New York law); *Lindenbaum v. Northwell Health, Inc.*, 21-CV-1525, 2022 WL 541644, at *7 (E.D.N.Y. Feb. 23, 2022) (opting to exercise supplemental jurisdiction over the plaintiff's "New York State law claims for medical malpractice" because the plaintiff's "Section 1983 claim will proceed.").  As set forth above, I recommend that because Plaintiff's federal claims are subject to dismissal, the Court decline to exercise supplemental jurisdiction over any state law claims.  The Court also notes that Plaintiff appears to allege that he has brought an action sounding in medical malpractice claim against

### 3.    Exclusive Remedy

"In New York, recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Workers' Compensation Law." *Arroyo v. WestLB Admin., Inc.,* 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999), *aff'd,* 213 F.3d 625 (2d Cir. 2000) (citing *O'Brien v. King World Prods., Inc.,* 669 F. Supp. 639, 641 (S.D.N.Y. 1987); *Persaud v. S. Axelrod Co.,* 95-CV-7849, 1996 WL 11197, at *5 (S.D.N.Y. Jan. 10, 1996)).  To the extent that a plaintiff may recover for his injuries under the Workers' Compensation Law, this law becomes the plaintiff's exclusive remedy against his employer.  *See* N.Y. Work. Comp. Law § 11.  Exceptions to the exclusive remedy provision of the Workers' Compensation law are limited to circumstances in which the employer failed to secure workers' compensation insurance or intentionally injured the employee.  *See Garibaldi v. Anixter, Inc.,* 492 F. Supp. 2d 290, 292 (W.D.N.Y. 2007) (citing *Hill v. Delta Int'l Mach. Corp.,* 386 F. Supp. 2d 427, 432 (S.D.N.Y. 2005)).

Thus, the exclusive remedy provisions of New York State's Workers' Compensation Law, provide employers an affirmative defense in claims seeking damages for accidental injuries arising out of and in the course of employment.  *See Hnatko v. Langston Corp*., 10-CV-0991, 2012 WL 1574751, at *2 (N.D.N.Y. May 3, 2012) (Mordue, J.) (granting the third-party defendant employer's motion to dismiss where it produced evidence that it had procured a policy of workers compensation and that the plaintiff received benefits pursuant to the policy as a result of the injuries he sustained); *Roche v. T.G. Realty, Inc.*, 266 A.D.2d 367, 367 (N.Y. App. Div. 2d Dep't 1999) (finding that the trial court erred in striking the defendant's affirmative defense

---

Defendant Caulkins in New York State Court.  As a result, any medical malpractice claim here may be duplicative.

based upon the exclusive remedy provisions of the Workers' Compensation Law). Therefore, the exclusive remedy provisions do not provide a private cause of action for Plaintiff to seek damages.

As a result, I recommend that, to the extent Plaintiff sought to assert a claim pursuant to the exclusive remedy provisions, such claim be dismissed for failure to state a claim upon which relief may be granted.

### 4.    Workers' Compensation Law

Here, Plaintiff alleges that Defendant NCAComp violated New York Workers' Compensation Law by denying him a gym membership. (Dkt. No. 5 at 13.) However, Plaintiff has already litigated the issue of his gym membership in state court. (Dkt. No. 5 at 8); *Brennan v. Vil. of Johnson City*, 192 A.D.3d 1287 (N.Y. App. Div. 3d Dep't 2021). The New York Appellate Division Third Department held that Plaintiff "successfully obtained authorization for a one-year gym membership, reimbursement for monies already paid for that membership and the right to reimbursement for future amounts paid for that gym membership." *Brennan*, 192 A.D. 3d at 1289. Therefore, the Appellate Division found that it lacked jurisdiction to entertain Plaintiff's appeal because Plaintiff obtained the relief that he sought and was thus, not "aggrieved by the Board's September 2019 decision such that he may invoke this Court's jurisdiction." *Id*. at 1288.

As a result, I recommend that, to the extent that Plaintiff seeks review of the New York State Workers' Compensation Board's decision regarding his gym membership, such claim be dismissed because he has obtained the relief he sought.[7]

---

[7]    In addition, Plaintiff's claim may be subject to dismissal based on the *Rooker-Feldman* doctrine, which directs that except for the Supreme Court, federal courts are not authorized to

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to amend is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding

L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[8]

In this case, it is not clear whether better pleading would permit Plaintiff to assert

cognizable causes of action pursuant to 42 U.S.C. § 1983, the ADA, and New York State law for

intentional infliction of emotional distress and violation of the Workers' Compensation

---

exercise appellate jurisdiction over state-court judgments.  *McKithen v. Brown*, 481 F.3d 89, 96
(2d Cir. 2007).

[8]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

provisions.  Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to amend the Complaint with respect to these claims.

However, with respect to Plaintiff's claims for violation of the Hippocratic oath and the exclusive remedy, I recommend that those causes of action be dismissed without leave to replead because the problems with those claims are substantive and a better pleading will not cure the deficiencies.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted.  Fed. R. Civ. P. 8(a).  In addition, the amended complaint must include allegations reflecting how the individual named as Defendant is involved in the allegedly unlawful activity.  Finally, Plaintiff is informed that any such amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 5) to the extent that it asserts claims pursuant to 42 U.S.C. § 1983, the ADA, and New York State law for intentional infliction of emotional distress

and violation of the Workers' Compensation provisions, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 5) to the extent that it asserts claims pursuant to the Hippocratic Oath and New York State Workers' Compensation Law exclusive remedy, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[9]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: April 25, 2022
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[9]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[10]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).