**-UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

Kevin Joseph Gabriel Brennan,                Civil Case Number:  3:22-CV-127
                                                                          (GTS/ML)

               Plaintiff.

                                    **SECOND AMENDED**
                                  **CIVIL RIGHTS COMPLAINT**
                                  **PURSUANT TO**
     vs.                 **42 USC §§1983, 1985(3) & 1986**

NCAComp, Inc.,

               Defendant.

Joleen Bolger (Snowdon), Individually, in her Personal
And Official capacity as Manager for NCAComp, Inc.,
               Defendant.

Ascension Lourdes,

               Defendant

Dr Anne Caulkins, Individually, in her personal and
official Capacity as Site Supervisor for
 Ascension Lourdes Pain and Wellness Center,
               Defendant.

Rene Barnes (Piccirilli), individually and in her personal
Capacity as Manager at the New York State Worker's
Compensation Board,
               Defendant

Plaintiff demands a trial by Jury.

Plaintiff in the above-captioned action alleges as follows:

**JURISDICTION**

A.    This is also civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States of America. This action is brought pursuant to 42USC §1983, §1985(3) and §1986.  This Court has jurisdiction of this action pursuant to 28 U.S.C. §§1331, 1343(3) and (4) and 2201.

B.                              PARTIES

1.              Plaintiff:      Kevin Joseph Gabriel Brennan

         Address:      319 Exchange Avenue

                       Townhouse #20

                       Endicott, New York 13760

C 2.        Defendant   NCAComp Inc.

         Owner:        Kevin Gregory

   Address:    (W) 14 Lafayette Square, Suite 700    (H) 107 Oakland Pl Apt2

             Buffalo, New York  14203     Buffalo, NY 14222

3.           Defendant:  Joleen M.  Bolger (Snowdon), Manager, NCAComp  Inc.

   Address:(W) 14 Lafayette Square, Suite 700      (H) 6557 Fairlane Dr.

             Buffalo, New York 14203      Boston, New York 14025

4.           Defendant:  Dr. Anne M. Caulkins, Lourdes Center Pain &Wellness

   Address:      (H) 21 Blackstone Ave    (W) 20-24 S Washington St,

             Binghamton, NY 13903  Binghamton, NY 13903

5.           Defendant:   Ascension Lourdes

Address:      Ascension Corporate office HQ.        .

101 S Hanley Rd. #450

St. Louis, MO  63105

6.          Defendant:  Rene Barnes (Picirrili)

Address:      63 Atchison Road

Binghamton, New York 13905

D.    My disability is as follows:

The plaintiff was granted Social Security Disability (SSD) from the United States of America Social Security Administration in October of 1998 for Bi-lateral Sacralitis which has reached a point that he now has chronic bilateral Sacraliliac Cluneal Nerve inflammation. He also has bi-lateral trocanteric (hip) bursitis with the left hip being replaced in 2011.  He also has bilateral knee degeneration qualifying for injections and eventually surgery.  He also has Ulcerative Colitis which requires that he take Mesalimine every day for the rest of his life so that he may not bleed out rectally.  There are doctors who call this last issue NSAID Gastropathy.  The Plaintiff shares this belief.  He obtained his injuries as the result of an accident at work on 11/1/1995.  He is a member of the protected class of workers permanently disabled in his case  as the result of an accident at work. Since the plaintiff has experienced no other life altering maladies, he has come to this conclusion.

E.    The conduct complained of in this action involves: RETALIATION,

NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL

DISTRESS and other acts specified below.    The plaintiff believes the tyranny

perpetrated by the NCAComp Inc. in the name of the New York State Worker's

Compensation Board is no different that the state sponsored torture he has endured

for over twenty years.    The actions of these state actors[1] were for one common goal

that being the ending of the claim.    By false diagnosis, false conviction and false

apportionment they all have done everything they can to destroy Brennan's life and

his family to force him to quit his worker's compensation claim or at the very least

minimize the state's responsibility.

1.    HISTORY OF PERSECUTION

a.    Brennan's worker's compensation is administered by the State authorized

Special Funds Conservation Committee.    Brennan is classified as a Section 25a or

basically a ward of the State.

b.    When Brennan was passed off to the NCAComp Inc. crew he was still a Sec.

25a. Upon Information and belief, the state sold Brennan's claim to NCA in the

summer of 2018.    Despite being a private entity, NCA comp undertook a duty

---

[1] The plaintiff argues that Administrators o f Sec. 25A injured workers are fulfilling a role which is equivialent to that of a state actor.

previously held by the state for money. This private insurer is still identified as the Special Funds Conservation Committer by the Comp Board. All forms associated with the claim are only generated and approved as WCB documents, all with their codes committed to memory.

c.    The plaintiff has shown and will continue to show that he is entitled to relief. To the tortured plaintiff it seems the court has done everything in its power to deny the plaintiff the relief he seeks. The employees of NCAComp Inc. are functioning as state actors much like a Private Prison guard is considered a State Actor for Sec. 1983 purposes (*Giron v Corrections Corp. of America* 191 F 3d 1281 Court of Appeals, 10th Circuit 1999).

## FACTS

1.    The resultant nightmare that he has endured has recently involved the Lourdes Memorial Hospital Pain and Wellness facility (Ascension Lourdes). Brennan (plaintiff) began seeing the physicians at this location in January of 2018 after receiving excellent treatment at Lourdes Physical Therapy at Shipper's Road.

2.    Brennan was referred to Lourdes Center for Pain and Wellness (LPW) by Dr. Federovich and first saw Dr. Therajirahj (Dr T). First thing he says to the plaintiff is what do you need those crutches for? The plaintiff hadn't been judged

by a doctor in a while. Dr. T suggested an Injection into the plaintiff's Sacral-iliac (SI) joint. The plaintiff receives SSD due to bilateral Sacralitis. On January 15, 2018, the plaintiff went to receive an injection into one of his SI joints at Lourdes Hospital, He did, was treated like a second class citizen by Dr Thiaji (raj) (he has people call him raj, however the procedure notes have his name as Thiaji and no raj). Dr. T's comments during procedure diminish whatever benefit Brennan received from injection and may be the reason for Thiaji's dismissal from Lourdes Memorial Hospital. Dr. T. was co-site supervisor with Dr. Caulkins and the resultant dismissal from Lourdes as a result of his comment to Mr. Brennan upon information and belief may be one reason why she has done what she has done.

3.    As of this point the Plaintiff had been receiving medical treatment for his NYS Worker's Compensation injuries through NYS' s Special Funds Conservation Committee. The plaintiff had been determined a Section 25a claimant as he is permanently disabled from an accident at work, despite being classified as temporarily disabled by the New York State Worker's Compensation Board (WCB). The plaintiff would opine this is done so the Board and Carrier can Surveille him. He has been under surveillance since 1996. Some of those early videos can be seen at McKiinnon Obannon's Channel on Youtube. The plaintiff would opine that the Employer will never use edited video against him again or use it against him in court. All Evidence of injury from work accident has been edited

out.    This criminal and fraudulent behavior is allowed per comp law or the plaintiff would assume so as he has tried to bring this criminality to the attention of the WCB since 1998 to zero avail.

4.    The plaintiff had been under the care or administration of Special Funds Conservation Committee.    In the Spring of 2018 his case was turned over to NCAComp. Inc.    His Claim Examiner was Manager, Jolene Bolger (Snowdon) (JB).

5.    On December 14, 2018 the plaintiff was injected with Depomedrol into both SI joints by Dr. Anne Caulkins while he was taking Meloxicam and Voltaren Gel, both powerful NSAIDS. The administering three powerful medicines at the same time is not a part of the normal duties associated with the medical profession.  Two gastroenterologists have testified that to do so would cause the gasto bleeding suffered by plaintiff.    At the end of the appointment, Brennan asked Dr. Caulkins if she understood why He was so upset at the Conflation of his comp related injuries.    She said, "You got the surgery right?"    That was the last time Brennan saw this physician.  Is the claimant allowed to get upset?

6.    In January of 2019, the plaintiff was disgusted by his treatment at LPW with Dr. Anne Caulkins, specifically, however he continued with prescribed medicines. This is the reason for the plaintiff's current medical malpractice complaint against Our Lady of Lourdes Pain and Wellness.  See Kevin Joseph Gabriel Brennan vs.

Our Lady of Lourdes Memorial Hospital, Index No. CA2021001185. This clearly identified complaint is a Medical Malpractice complaint that is viewable to the public. Simply go to the IQS website, click on New York, and then click on Broome County. On the bottom of the page is a place where anyone can put the above mentioned Index No. and see all the exhibits. It is the filing of these complaints with Lourdes Hospital that resulted in the retaliation by Dr. Caulkins.

7.    Also in January, the plaintiff experienced the worst episode of rectal bleeding he had ever had. He was immediately concerned and went to the Lourdes Walk-in in Endicott, New York. The plaintiff saw Nurse Practitioner Samidol who agreed with Brennan to stop taking the Meloxicam, however there was never any mention of the Voltaren gel (Vg). The plaintiff thinking that this stuff is ok. The plaintiff began Vg in 2012 for use on his bilateral hip pain. His left hip is replaced which prevents injections in this area. Hips were added to ANCR in January of 2011

8.    NP Samidol gave the plaintiff a prescription for Anusol, however Brennan did not have the $200.00 for the medication and instead purchased Preparation H.

9.    On February 10, 2019 the plaintiff filled his prescription for Voltaren Gel however the amount he usually took was doubled from two tubes to four. See Exhibit A as Brennan's prescription log at Lourdes Pharmacy on Shipper's Road.

10.    In February of 2019 the plaintiff continued to experience rectal bleeding; what he would come to know as blood mixed with stool.  This is not good and Plaintiff scheduled an appointment with Dr. Atif Saleem, the same Gastroenterologist plaintiff saw in 2016 for colonoscopy which identified bleeding hemorrhoid and diverticulitis.    All paid by the Worker's Compensation carrier/administrator, Special Funds Conservation Committee without any denial.

11.    The plaintiff had requested a new prescription from the provider Lourdes Pain and Wellness for Voltaren Gel (generic – diclofenac gel).    Without an appointment, Brennan has refilled his prescriptions in this way for decades. Expecting to receive two tubes, the plaintiff was given an amount of Vg that was twice the amount he had been taking for several years.  The amount of Vg the plaintiff had been taking was 200mg and on February 10, 2019 he was given 400mg.  See Exhibit B as a letter, dated March 21, 2019, from the plaintiff to his comp case manager, Jolene Bolger.    Thanking her for the increase in his medication and reminding her of the importance of his gym membership.  At that time, the plaintiff thinks "Vg is the greatest thing for his hips and low back (SI Joints)".  Jolene Bolger knows what this medication can truly do, as does Dr. Anne Caulkins.  NCA also denied gym membership and plaintiff appealed.

12.    New York State Education Law Article 137 Sec. 6810 Prescriptions is the only legal statement regarding the issuing of prescribed meds.  Dr. Caulkins did

not follow these procedures in doubling the Powerful topical nsaid Voltaren gel (diclofenac gel).  He also spoke to a representative of the WCB who stated for a change in medication, the doctor must send a "variance" (special State form) requesting the change and the reason to do so, to the carrier, who  must then be authorized by the carrier and sent to doctor then to pharmacy.  The person providing this information acted like the plaintiff was daft for asking such a common sense question.  Will still search, however the IFP plaintiff does not have the same capabilities as the court.

13.    NYS Worker' s Compensation Law and any prescription change must accompany either an appointment where the request was made or in writing from treating physician, in order for a claimant to change his prescription, especially double it, their physician <u>must</u> provide a written reason why the increase is necessary.  From the insurer's stand point the most important issue is the increase in cost.  The Plaintiff has never seen any notes explaining the need for increase as there was never any appointment where claimant/plaintiff requested the change. The record of prescriptions that is Exhibit A has Brandy Benjamin as the physician who requested the increase. Brandy is a Nurse Practitioner and directly supervised by Dr. Caulkins

14.    In July of 2018 the plaintiff was granted use of Vg on his bilateral SI joint issue; however the dosage was to remain the same.  In Appointment at that time,

Dr. Caulkins stated, they may not increase due toxicity. Plaintiff believes Dr. Caulkins is thoroughly aware of what this medication can do.

15.    On February 26, 2019, Brennan had appointment with Dr. Saleem at Binghamton Gastroenterology in Binghamton, NY. The result of the appointment and NYS WCB form C-4 requesting a colonoscopy was to determine the cause of Plaintiff's rectal bleeding. Jolene Bolger (JB) assisted the office staff with completing the form.

16.    The insurer receives a copy of this form, as does the WCB.

17.    Insurer's representative and Brennan's claim examiner, JB, helped complete the form and did not respond as the form indicates is necessary because it wasn't completed properly, which can be a reason for denial. According to Comp Law if such a request is not authorized within a specific amount of time, the claimant IS authorized to get the procedure; however the insurer doesn't have to pay for it, thereby denying a claimant who doesn't have insurance to pay for such a procedure as the medical provider does not provide procedures for free. The plaintiff calls this Cost Shifting and it is a way the comp insurers force claimant's to acquire medically necessary procedures without paying for it.

18.    Upon information and belief, Dr. Caulkins was notified of the reason for Brennan filing his medical malpractice in February of 2019. This is also when Dr. Caulkins doubled Brennan's prescription for what turns out to be a powerful

NSAID which contains the chemicals known to cause deterioration of the mucosal walls of the colon.

19.    The plaintiff did not have the procedure and continued to receive and administer the Vg to his lower back.  He had stopped all other medication he had been taking except for the Vg as he had no idea that this medication was a topical form of the NSAIDS he had been taking from 1996 until 2017 when he quit all pills due to rectal bleeding, on his own.

20.    The case manager Jolene Bolger authorized Brennan's prescription change and intentionally failed to identify the proper procedure for completing the form known as a C-4.

21.     The Insurer/carrier/administrator NCAComp, Inc. where Ms. Bolger is employed denies claimant's request's for a medical procedure by not explaining how to properly complete a form to request the procedure.

22.    Jolene Bolger authorizes the doubling of the claimant's medicine without a reason but intentionally fails to grant authorization for a form that was filled out incorrectly which was/is intended to determine the cause of the problem.  The Claimant did DO what he had to do find all this out.

23.    Appeal filed. Dr kyung kim lied in medical reports. Discovered.

24.    First he requested a hearing to discern why the procedure was not authorized, filing all the necessary forms to finally get a hearing in May of 2019.

At the hearing the judge told him what was missing.  All the while He has blood mixed with his stool and continues to take Vg at an increased dosage.  The hearing also entailed issues such as gym membership and mileage reimbursement.

25.    This was the first of four times Brennan requested the mileage reimbursement and NCA delayed.  While they have eventually paid, the IIED this causes a poor disabled person is not insignificant, as it seems the courts deem.

26.    The claimant was also requesting mileage reimbursement and his case was turned over to Mr. Christopher Gordon with NCAComp Inc. and is directly supervised by Ms. Bolger.

27.    Plaintiff had been working directly with the Gastro provider to ensure the form would be properly filled out.  Mr. Gordon approved the form and the notes indicate the form is granted as it is causally related, however the form may not be completed correctly and will be disputed,  which might as well be a denial.  The plaintiff would opine the insurer never had any intention of paying for Brennan's procedure.

28.    Authorization of this C-4 was not denied despite as the original mistake was corrected and whatever Mr. Gordon identifies as incorrect is never brought to light.

29.    Brennan received Health Insurance for the first time in twenty years on June 1st, 2019.  The plaintiff's new health insurance was billed. The actions of NCAComp  prove the "Cost shifting" theory, which is meant to deny a claimant

medical treatment so the company (NCA) does not have to pay for it.  In this case, the plaintiff believes the employees of NCAComp Inc are paid to deny claimant's proper requested medical treatment however the plaintiff believes the denial of due process both procedural and substantive are called into for their egregious actions may have led to the permanent injury to the colon and intestines called Ulcerative Colitis.

30.    Brennan scheduled his first colonoscopy for June 12, 2019.  That day he was told he had Ulcerative Colitis and would have to take medicine called Mesalamine for the rest of his life.  That night as he was putting the Vg on his SI joints which happen to be inches away from his colon, he thought "let me look at the label for this".  So he did and it clearly states to stop use if rectal bleeding occurs.

31.    The next day the Claimant started taking Mesalimine which cost $450.00/ mo at that time and stopped putting the Vg on his back or anywhere on his body ever again.  The rectal bleeding stopped immediately the following day.

32.    For the next several months the plaintiff "fought" in Worker's compensation court to have his Ulcerative Colitis (UC) included to his Accident, Notice and Causal Relationship (ANCR) which is the listed injuries associated with the claimant's original injury.

33.    In December of 2019, Mr. Mencini attorney for claim administrator, NCAComp called the plaintiff to offer a settlement of $10,000.00 for all of his accident related injuries.  For multiple reasons, the plaintiff refused Mr. Mencini.

34.    Upon information and belief all of these actions have been identified by the New York State Worker's Compensation Board.   The plaintiff has sent letters to the carrier which were emailed to Rene Barnes.  Rene Barnes has access to the information that the plaintiff was being treated for rectal bleeding and may know that the Voltaren Gel was being doubled and did nothing.  She would know that the plaintiff was being denied necessary medical treatment however the board would not want the employer/ carrier/ administrator to be responsible for injuries caused by medication paid for by the Board's edict.

35.    Also in December, Brennan receives an   "ex parte" " record review only""Independent Medical Exam" from Dr. Ira Breite, Gastroenterologist.  In it he made several false claims, entirely leaving out the powerful NSAID Meloxicam (Mobic), briefly mentioning the diclofenac gel (Vg)  and claiming Brennan's left hip surgery (4/2011 surgery date) was not causally related.  The most outrageous of all was Dr. Briete's determination that Ulcerative Colitis (UC) may not be a disease and with twisted logic there can be no medicine to treat it.

36.   The plaintiff would opine that these outrageous statements and affirmation are all in service to the once good doctor's payor, the NCA.  Dr. Briete would know that his statements were false and in making these false statements he was undermining the ability of the plaintiff to obtain adequate medical treatment from the employer for causally related medical treatment.

37.   Dr. Breite does know that UC is a disease and can be a very bad one, with or without medication.  He is clearly lying for his payor, NCAComp, Inc. who pay another company which Dr. B is allegedly a private contract ,except that all IME doctors receive there stipend for service directly deposited into their account which makes them a strong candidate as a state actor. Another violation of the plaintiff's Procedural and Substantive due process rights as guaranteed by the US Constitution as well as Fourth and Seventh amendment violations.

38.   All of these actions have occurred under the color of New York State Worker's Compensation Law.

39.   The claimant is permanently injured and the Worker's Comp Board of NY wishes he remain not disabled.  In 2021 was he granted 45% partial permanent disability for his left hip from surgery in April of 2011.  Added to Brennan's ANCR in Jan of 2011, it was initially identified without objective medical evidence as Aseptic Necrosis in 1997, allowing the Employer to arbitrarily slash his WCB benefit from $338.60 per week to 169.30 less $110 per week for child

support leaving him with less than $60.00 per week to live or die but denial of due process in 1997 is not what <u>this</u> complaint is about.

40.   Dr. Caulkins told Brennan she would complete form so that He could be classified as permanently disabled and settle his claim with WCB.  If he is not properly classified they will not settle (Sec. 32 Medical only payments) or attempt to do so at a far less amount. Doctor Caulkins made this statement while the Plaintiff recorded the appointment.  Upon information and belief she never had any intention of completing the form and it was never returned to Brennan, which he believes is a violation of his HIPPA rights.

G.                             **CAUSES OF ACTION**

   **42 USC 1983** - To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. <u>*Parratt* v. *Taylor*, 451 U. S. 527, 535 (1981)</u>

   **42 USC 1985(3)** – "To ensure that private conspirators do not strip other citizens of the equal protection of the laws, we must be particularly concerned with those discrete and insular minorities who have traditionally borne the brunt of

prejudice in our society."584 F2d at 1243.  The plaintiff believes the permanently disabled or handicapped are a protected minority.

## FIRST CAUSE OF ACTION

Dr. Anne Caulkins and Jolene Bolger (Mckown) filled the claimant's prescription at double the previous amount without a medical reason.  This increase was authorized by Jolene Bolger who had just failed to properly complete the medical procedure form to determine cause of new rectal bleeding.  The continuation of the medication DID allow for the continuation of bleeding.  Doctors and for sure Insurance Claim Administrators don't want to add to an injured worker's ANCR and intentionally fail to address situations whereby the medications paid for by WCB cause additional problems.  Dr. Caulkins intentionally prescribed twice the amount of medication, knowing the dangers of this medication and its affect on the colon.  Caulkins was notified in February via plaintiff's **INTERNAL** complaint delivered to Ascension Lourdes Occupational Health at Shipper's Road.   She was told that Brennan had an episode of rectal bleeding and doubles the medication which may be the proximate cause of his injuries.  She did this in retaliation for Brennan's notification of dissatisfaction with Dr. Caulkins actions not any legally filed lawsuit.  She may have altered the notes of Kevin Brennan on 8/28/18 in order to cause IIED and a reaction from

Brennan who did get Very upset when he read those notes several weeks later.

Both Bolger and Caulkins showed deliberate indifference to a serious medical need

and have violated the plaintiff's Eighteenth Amendment rights.


## SECOND CAUSE OF ACTION

Jolene Bolger intentionally denied the plaintiff necessary medical treatment

by intentionally failing to provide proper information when said information was

requested.   Under the color of New York State Worker's Compensation law,

Bolger told provider wrong info, knowing the request for authorization would be

denied because she provided the incorrect information.   The denial of medical

treatment was a violation of the claimant's exclusive remedy right to medical

treatment in exchange for not filing a complaint against his employer. Bolger

denies medical treatment while authorizing a doubling of a powerful prescription

medication  without a reason for the increase.   Her callous intent to cause harm to

the plaintiff is clearly evident.  The plaintiff has a Constitutional right to be treated

the same as every other Comp recipient.  That is not the case unless the NCA has a

policy of depriving injured workers of adequate medical treatment.

## THIRD CAUSE OF ACTION

NCAComp through its employees denied the claimant/plaintiff his doctor

prescribed  gym  membership  in  violation  of  New  York  State  Worker's

Compensation Law, where correctly requested treatment such as a gym membership is authorized for a hip injury.   Under color of New York State Worker's Compensation law the plaintiff was denied his constitutional rights.   And as a part of their terror campaign all comp victims suffer.   To be denied something as critical as the plaintiff's physical regimen is a continuation of the suffering the plaintiff has endured for over twenty years all for getting into an accident at work.

## FOURTH CAUSE OF ACTION

The claimant has repeatedly been requesting the Board and various doctors to categorize his injuries as permanent.   At appointment in August 28, 2018, Brennan gave Dr. Caulkins a form whereby she could identify Brennan's bilateral sacralitis as permanent, allowing him to get out from under the persecution of the Comp Board with what is known as a Section 32.   In audio recording made by Brennan after waiting 45 minutes, Dr. Caulkins stated that she would complete the form.   Instead the notes from that day claim Brennan's left hip replacement was not  causally related.   When the claimant sees falsities like this he opines this Doctor is trying to reduce or minimize his ANCR.   Couple this with statement from Dr. Briete he becomes disgusted.   The false diagnosis is another example of the "(i) extreme and outrageous ocnduct; (ii) intent to cause, or certainly a disregard of a substantial probability of causing, severe emotional distress; (iii) a

causal connection between the conduct and injury; and (iv) severe emotional distress" *Howell v. N.Y. Post Co. Inc.*, 81 N.Y. 2d at 121 (NY 1993).

## FIFTH CAUSE OF ACTION

Dr. Ira Breite owes a duty to his profession to do no harm or make false diagnosis. The Plaintiff is/was never a patient of Dr.Briete, however, to say that Ulcerative Colitis is not a disease and therefore there can be no medication to treat it is preposterous and proof that this man has violated his Hippocratic oath in service to  his payor the Employer/ comp board/ insurer and in violation of the plaintiff's constitutional rights. Dr. Ira Breite has violated Brennan constitutional right to due process and equal access to medical treatment.  For a Gastroenterologist make false statement regarding his profession and denying the need for medication so the Comp board's Insurers don't have to pay for it is reprehensible.  What is the damage to the plaintiff? He doesn't trust any medical doctor or any person for that matter.

## SIXTH CAUSE OF ACTION

Rene Barnes has been emailed many documents the plaintiff  mailed to various carriers over the years.  Copies of letters sent to the Board and email to Ms.

Barnes are available.  Ms Barnes (Piccirilli) had(s) access to all of Brennan's file and the many complaints regarding obvious obstacles to receiving the medical treatment agreed to by the NYS WCB in return for the injured worker not filing a complaint against their employer, Barnes knew and knows that Brennan has been grossly denied his right to due process and access to accommodations, not too mention the fact that he is permanently disabled from an accident at work the Board refuses to identify as permanent.  This fact alone is a gross violation of the claimant's right to life, liberty and the pursuit of happiness.  It is an intentional infliction of emotional distress meant to intimidate the injured worker into giving up their rightful claim.

## SEVENTH CAUSE OF ACTION

Under color of New York State Worker's Compensation Law, the claim administrator provided incorrect information to the medical provider, knowing authorization would be denied.  All meant to deny both procedural and substantive due process.   NCA intentionally denied the Plaintiff the medical procedure available to other similarly situated injured workers.  NCA's intentional denial of authorization is a gross violation of the covenant of "Exclusive Remedy".  Exceptions to Exclusive Remedy are when the employer intentionally harms the employee.  Garibaldi v. Anixter, Inc., 492 F. Supp. 2d 290, 292 (W.D.N.Y. 2007) (citing Hill v. Delta Int'l Mach. Corp., 386 F. Supp. 2d 427, 432 (S.D.N.Y. 2005)).

## EIGHTH CAUSE OF ACTION

The New York State Worker's Compensation Board has persecuted the Plaintiff since November 1, 1995 for getting into an accident at work. Brennan has endured a deliberate and maliciouis campaingn of harassment and intimidation all meant to end his claim. "Where severe mental pain or anquish is inflicted through a deliberate and malicious campaing of harrassment or intimidation" IIED provides a remedy. *Nader v. Gen. Motors Corp* 25 N.Y. 2d at 569 (NY 1970).

## NINTH CASE OF ACTION

The New York state Worker's compensation board has promoted Brennan's doctor to NOT classify him as disabled so as to prevent adequate medical treatment and other issues beneficial to the plaintiff. In denying permanency, Brennan has been subjected to the NYS WCB Medical Treatment Guidelines. Brennan is permanently disbled and the NY MTG clearly has NO ACCOMMODATION for those who CANNOT work a full time job. The plaintiff is more than able to provide what he believes is proof that Lourdes Pain and wellness center received a benefit for NOT identifying Brennan as permanently disabled. Plaintiff believes that such information would be promulgated via the discovery process. Should the court wish to see this data they are more than welcome to it. Plaintiff has just discovered that specific documents related to the case are missing, specifically the

Exhibits attached to the first Amended Complaint. The file they were in is missing. Ordinarily, the plaintiff would download/ copy these exhibits from Pacer.gov however they are sealed. As such the plaintiff would request that those exhibits be made a part of this complaint as proof of the connection between the State actors, NCAComp Inc, its employees and the continued harrasment and intimidation the claimant/ plaiontiff endures.

H.                              **PRAYER FOR RELIEF**

       **WHEREFORE,** plaintiff requests that this Court grant the following relief:

1. NCAComp Inc. intentionally denied the claimant medical treatment and mileage reimbursement in violation of the plaintiff's constitutional rights on multiple occasions. Plaintiff requests $120,000.00 US for each violation committed by its employees and subcontractors.

2. Dr. Anne Caulkins violated her very oath to do NO Harm when she increased the plaintiff's medication without an appointment or reason. Her actions are the proximate cause of the claimant's Ulcerative Colitis therefore she owes the plaintiff $120,000.00US for each violation of the plaintiff's constitutional rights.

3. NCSComp, Inc, and Jolene Bolger owe the Plaintiff $120,000.00US for each violation and damages.  In the course of her usual business she intentionally denied the plaintiff the medical procedure which may have determined the cause and diagnosis for rectal bleeding while authorizing the doubling of Plaintiff's medication which is known to cause rectal bleeding without reason. . The emotional distress this has caused the plaintiff is only made worse by the deliberate indifference of the defendants.

4. Ascension Lourdes and Ms. Rene Barnes owe the Plaintiff $120,000.00US for each violation and damages.  Ms. Barnes (Picirrili) has been made aware of the multitude of infringements upon the Plaintiff's Constitutional rights as well as the IIED for over two decades. Most recently every mileage reimbursement by RCA was delayed several months causing great hardship upon the plaintiff, such that he on two separate occasions requested a fine in the amount of $1000 (all proper by WCL) for the intentional delay.  They never did.

5. Intentional Infliction of Emotional Distress.   All defendant's are complacent in the perpetration of injustices upon the claimant.  Some are legitimate as far as the comp board seems to be concerned.  The plaintiff believes his rights guaranteed by the constitution have been ripped apart,

thanks to the NYS WCB and its agents or the parasites that suckle the teet of the comp board.

6. The New York State Worker's compensation board has allowed carriers and administrators to destroy the plaintiff's life. They have abrogated the Exclusive Remedy clause and Plaintiff requests the declatory relief stating such. The employer Village of Johnson City was a part of Broome County New York's Self Insurer program. All that has been done has been done in the name of the Village of Johnson City. The first insurer/ administrator, Broome County New York cut all the plaintiff's weekly benefit without any legal reason on June 10, 1998. But for the fraud perpetrated upon the plaintiff with the false diagnosis this whole nightmare would never have happened. Plaintiff demands $338.60 per week from June 10, 1998 to present if not for classifying a disabled man as temporarily disabled but the twenty year campaign of persecution.

The 14trh Amendment to the US Constitution prevents states from infringing on "the privileges or immunities of citizens of the United States" without due process of law.

As the plaintiff is a member of the protected class of Disabled Americans and as such has been a recipient of Social Security Disability since October 8, 1998, which has saved the life of his children not to mention himself, all

compensatory damages and monetary amounts for violations are all multiplied by three.

I declare under penalty of perjury that the foregoing is true and correct.

DATED:         September 2, 2022

Kevin Joseph Gabriel Brennan
319 Exchange Avenue
Townhouse #20
Endicott, New York  13760

## VERIFICATION

STATE OF NEW YORK

COUNTY OF BROOME

Kevin Joseph Gabriel Brennan  being duly sworn and says that deponent is the *In Propria Persona*  and *In Forma Pauperis* plaintiff in the above-encaptioned proceeding, that he has read the forgoing  and knows the contents thereof, that the same is true to deponent's knowledge, except as to matters therein stated upon information and belief, which matters deponent believes to be true.

Kevin J. G. Brennan
319 Exchange Ave.
Townhouse #20
Endicott, New York 13760
607-624-4436

Sworn to before me this
2nd day of September, 2022

Notary Public

JENNIFER L SLATER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SL6280533
Qualified in Broome County
My Commission Expires 04-29-2025

**STATE OF NEW YORK**
**COUNTY OF BROOME**

---

Kevin Joseph Gabriel Brennan,

                    Plaintiff

v.

NCAComp, Inc.; JOLEEN M. BOLGER (Snowdon),
Manager of NCAComp, Inc.; ASCENSION LOURDES;
DR. ANNE M. CAULKINS, Site Supervisor
Of Ascension Lourdes Center for Pain and
Wellness, RENE BARNES (Picirrili), Manager
of NYS Worker's Compensation,
                    Defendants.

**AFFIDAVIT OF
SERVICE**

**3:22-CV-0127 (GMS/ML)**

---

STATE OF NEW YORK
COUNTY OF BROOME

        Kevin J. G, Brennan being duly sworn deposed and says:

        I am over 18 years of age and the in forma pauperis and in propria persona

plaintiff in the above captioned proceeding.  On September  3rd,  2022 I served the

Second  Amended  Complaint  dated 9/2/2022 via CMF/ECF  court  system  by

emailing a copy of the original.

                                             Kevin Joseph Gabriel Brennan

Sworn to before me this
2nd day of September, 2022

_____
       Notary Public

JENNIFER L SLATER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SL6280533
Qualified in Broome County
My Commission Expires 04-29-2025