UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KEVIN JOSEPH GABRIEL BRENNAN,

                        Plaintiff,

v.

NCACOMP INC., Owner Kevin Gregory;                3:22-CV-0127
JOLEEN M. BOLGER, (Snowdon) Manager,          (GTS/ML)
NCA Inc.; DR. ANNE M. CAULKINS;
DR. IRA BREITE; and RENE BARNES
(Picirrili),

                        Defendants.
_____

APPEARANCES:                                                    OF COUNSEL:

KEVIN JOSEPH GABRIEL BRENNAN
  Plaintiff, *Pro Se*
319 Exchange Avenue, Townhouse #20
Endicott, New York 13760

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent this *pro se* second amended complaint filed by Kevin Joseph Gabriel Brennan ("Plaintiff") to the Court for review. (Dkt. No. 16.) For the reasons discussed below, I recommend that Plaintiff's Second Amended Complaint (Dkt. No. 16) be dismissed in its entirety without leave to amend.

**I.    BACKGROUND**

As set forth in the undersigned's Order and Report-Recommendation dated April 25, 2022, Plaintiff commenced this action on February 10, 2022, by the filing of a Complaint

alleging that his rights were violated by defendants NCAComp Inc., Joleen Bolger, Dr. Anne M. Caulkins, Dr. Ira Breite,[1] and Rene Barnes (collectively "Defendants"). (Dkt. No. 1.) On March 25, 2022, Plaintiff filed an amended complaint as of right, which superseded his original complaint. (*See* Dkt. No. 5 [Am. Compl.]); *Int'l Controls Corp v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.").

After granting Plaintiff leave to proceed *in forma pauperis*, the undersigned conducted a review of his Amended Complaint pursuant to 28 U.S.C. § 1915, and recommended that the Court dismiss the Amended Complaint (1) with leave to replead to the extent that it asserted claims pursuant to (a) 42 U.S.C. § 1983, (b) the Americans with Disabilities Act ("ADA"), (c) New York State law for intentional infliction of emotional distress, and (d) New York State Workers' Compensation law for the denial of a prescribed gym membership, for failure to state a claim upon which relief may be granted, and (2) without leave to replead to the extent that it asserted claims pursuant to (a) the Hippocratic Oath, and (b) New York State Workers' Compensation Law exclusive remedy, for failure to state a claim upon which relief may be granted. (Dkt. No. 6.)

On August 4, 2022, Chief United States District Judge Glenn T. Suddaby issued a decision and order that accepted and adopted the undersigned's Order and Report-Recommendation in its entirety. (Dkt. No. 15.)

---

[1] Plaintiff appears to include claims against Defendant Breite in the body of the Second Amended Complaint. (*See generally* Dkt. No. 16.) However, the caption of the Second Amended Complaint appears to replace Defendant Breite with Ascension Lourdes. (Dkt. No. 16 at 1.)

2

On September 3, 2022, Plaintiff filed a Second Amended Complaint, which is pending before the Court for review. (Dkt. No. 16.) Plaintiff's Second Amended Complaint is—in most respects—virtually identical to his Amended Complaint. (*Compare* Dkt. No. 5 at 3-14, *with* Dkt. No. 16 at 5-22.)

In his Second Amended Complaint, Plaintiff alleges that on November 1, 1995, he sustained an injury at work, which resulted in permanent disability. (*See generally* Dkt. No. 16.)

Plaintiff alleges that "in the summer of 2018"[2] his New York State workers' compensation claim was sold to Defendant NCAComp Inc. and Defendant Bolger was assigned as his claim examiner manager. (*Id.*)

Plaintiff alleges that on December 14, 2018, he was injected with Depomedrol by Defendant Caulkins while he was also taking Meloxicam and Voltaren Gel. (*Id.*) Plaintiff alleges that in January 2019, he "experienced the worst episode of rectal bleeding he had ever had." (*Id.*) Plaintiff alleges that due to his rectal bleeding, he went to "the Lourdes Walk-in," where he was directed to stop taking the Meloxicam but the Voltaren Gel that he was prescribed was not discussed. (*Id.*)

Plaintiff alleges that on February 10, 2019, he filled his prescription for Voltaren Gel, but the amount that he was usually prescribed doubled "from two tubes to four." (*Id.*) Plaintiff alleges that, pursuant to New York State Workers' Compensation Law, any prescription medication change must be accompanied by either an appointment where the change was requested or a written order from a treating physician explaining why the change was necessary.

---

[2]  Plaintiff also states in the Second Amended Complaint that his workers' compensation claim was "turned over to" Defendant NCA Comp. in the spring of 2018. (*Compare* Dkt. No. 16 at 4, *with* Dkt. No. 16 at 7.) However, the exact season during which Defendant NCAComp began administering Plaintiff's workers' compensation claim is immaterial for purposes of this review.

(*Id*.) Plaintiff alleges that he did not request a change in the amount of Voltaren Gel and he has not seen any written order explaining a need for the increase. (*Id*.)

Plaintiff alleges that on February 26, 2019, he was examined by Dr. Saleem, who ordered a colonoscopy to determine the cause of Plaintiff's rectal bleeding. (*Id*.) However, Plaintiff alleges that he did not have the colonoscopy procedure because his request through workers' compensation was not approved and he did not have health insurance. (*Id*.)

Plaintiff alleges that, at some point in time in 2017, due to the rectal bleeding, on his own accord, he stopped taking all of the other medication he was prescribed except the Voltaren Gel. (*Id*.)

Plaintiff alleges that on June 1, 2019, he obtained health insurance. (*Id*.) Plaintiff alleges that he had his first colonoscopy on June 12, 2019, and was diagnosed with ulcerative colitis, which requires that he take Mesalamine for the rest of his life. (*Id*.) Plaintiff alleges that on June 12, 2019, he applied the Voltaren Gel and looked closely at the container, which contained a warning to discontinue use if rectal bleeding occurred. (*Id*.) Plaintiff alleges that he immediately ceased use of Voltaren Gel and began taking Mesalimine, and the rectal bleeding stopped the following day. (*Id*.)

Plaintiff alleges that he has sought to have his ulcerative colitis diagnosis included in his workers' compensation claim associated with his original injury. (*Id*.)

Plaintiff alleges that Voltaren Gel is "a powerful NSAID which contains the chemicals known to cause deterioration of the mucosal walls of the colon." (*Id*.) Plaintiff alleges that in July 2018, Defendant Caulkins stated that Plaintiff's prescription for Voltaren Gel could not be increased because of the toxicity of it. (*Id*.) Plaintiff alleges that he filed a medical malpractice

4

lawsuit in New York State court against Defendant Caulkins, and that in retaliation, she improperly doubled his prescription for Voltaren Gel. (*Id.*)

Plaintiff alleges that Defendant Bolger improperly authorized his Voltaren Gel prescription change but failed to authorize the colonoscopy procedure. (*Id.*)

Plaintiff alleges that Defendant NCAComp and its employees intentionally deny medical treatment so that it does not have to pay for the treatment. (*Id.*)

Plaintiff alleges that Defendant Barnes is associated with the New York State Workers' Compensation Board and was aware that Plaintiff was being treated for rectal bleeding, that his Voltaren Gel prescription was doubled, and took no action to protect him. (*Id.*)

Plaintiff alleges that in December—of an unspecified year—he received a report completed by independent medical examiner Defendant Breite, which included several false claims and omitted significant information. (*Id.*)

Based on these factual allegations, Plaintiff appears to assert the following nine causes of action: (1) a claim that Defendant Caulkins retaliated against him by improperly doubling his prescription for Voltaren Gel after he filed a medical malpractice suit against her, and that Defendant Bolger authorized the improper increased prescription; (2) a claim that Defendant Bolger intentionally denied Plaintiff's necessary medical treatment by failing to provide information when requested and then providing inaccurate information; (3) a claim that Defendant NCAComp, through its employees, denied Plaintiff his prescribed gym membership in violation of New York State Workers' Compensation Law; (4) a claim that Defendant Caulkins falsified records by stating that Plaintiff's left hip replacement was not causally related to his work injury; (5) a claim that Defendant Breite violated his Hippocratic oath by stating that ulcerative colitis is not a disease, which caused violations of Plaintiff's "constitutional right to

due process and equal access to medical treatment"; (6) a claim that Defendant Barnes has been e-mailed "many documents" and knows that Plaintiff "has been grossly denied his right to due process and access accommodations" and that he is permanently disabled but the Workers' Compensation Board refuses to identify him as such, which is a "gross violation of [his] right to life, liberty, and the pursuit of happiness" and an intentional infliction of emotional distress; (7) a claim that pursuant to New York Workers' Compensation Law, Defendant NCAComp intentionally denied Plaintiff a medical procedure, which resulted in denial of his procedural and substantive due process rights and was a "gross violation of the covenant of 'Exclusive Remedy'"; (8) a claim that the NYS Workers' Compensation Board harassed and intimidated Plaintiff in an effort to get Plaintiff to "end his claim"; and (9) a claim that the New York State Workers' Compensation Board has provided benefits to Plaintiff's medical providers for not identifying Plaintiff as permanently disabled. (*Id*.)

As relief, Plaintiff seeks $120,000.00 in damages for each violation committed by Defendant NCAComp and its employees and subcontractors, fines in the amount of $1,000.00 for the delay in timely responding to Plaintiff's milage reimbursement requests, $338.60 per week from June 10, 1998, to date for failure to classify Plaintiff as permanently disabled, and treble damages. (*Id*.)

## II.   LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

### III.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Second Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

#### A.   Claims Pursuant to 42 U.S.C. § 1983

To the extent that Plaintiff attempts to assert any constitutional claims, the Court construes those claims as made pursuant to 42 U.S.C. § 1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks omitted). "A plaintiff pressing a claim of [a] violation of his constitutional rights under § 1983 is thus required to show state action." *Fabrikant*, 691 F.3d at 206 (internal quotation marks omitted). "State action requires *both* . . . the exercise of some right or privilege created by the State . . . *and*" the involvement of "a person who may fairly be said to be a state actor." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and brackets omitted).

There is no single test that is determinative of whether a private person or entity may be a state actor, but rather a host of factors. *Baum . N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428 (N.D.N.Y. 2011) (Treece, M.J.). A state actor may be found when: (1) "[the challenged activity] results from the State's exercise of coercive powers"; (2) "the State provides significant encouragement, either overt or covert . . . or when a private actor operates as a willful participant in joint activity with the State or its agents"; (3) "it is controlled by an agency of the State;" (4) "it has been delegated a public function by the State [known as the public function test]"; or (5) "it is entwined with governmental policies or when government is entwined in its management or control[.]" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001) (citations, quotation marks, and alterations omitted).[3]

---

[3]   On occasion, these criteria have been stated differently but the impact remains the same:

> The conduct of private actors can be attributed to the State for [§ 1983] purposes if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State.

9

Plaintiff's claims pursuant to 42 U.S.C. § 1983 asserted in his Amended Complaint were dismissed by the Court for, *inter alia*, failure to allege state action. (Dkt. No. 6 at 8-12; Dkt. No. 15.)

With respect to Defendants NCAComp and Bolger, Plaintiff attempts to cure this deficiency in the Second Amended Complaint by alleging that Defendant NCAComp acts "in the name of the New York State Worker's Compensation Board" and that when his claim was sold to Defendant NCAComp, Defendant NCAComp "undertook a duty previously held by the state." (Dkt. No. 16 at 4-5.) In addition, Plaintiff alleges that "[t]he employees of [Defendant] NCAComp Inc. are functioning as state actors much like a Private Prison guard is considered a State Actor for Sec. 1983 purposes." (*Id*. at 5.)

Thus, Plaintiff appears to allege that Defendant NCAComp and its employees—like Defendant Bolger—were engaged in conduct that was traditionally the exclusive prerogative of the State. However, as set forth in my Order and Report-Recommendation, very few functions fall into the public-function category. The Supreme Court has stressed that administering insurance payments is not considered a public function. *Manhattan Cmty. Access Corp*., 139 S. Ct. at 1929. Further, the administration of insurance payments in connection with a state workers' compensation system is not a function traditionally and exclusively exercised by the government. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55-57 (1999) (holding that private companies' administration of insurance payments in connection with state workers' compensation system was not state action); *Peterec-Tolino v. Ace Am. Ins. Co.*, 20-CV-5354, 2020 WL 5211045, at *4-5 (S.D.N.Y. Aug. 28, 2020) (holding that independent medical

---

*Hogan v. A.O. Fox Mem'l Hosp.,* 346 F. App'x 627, 629 (2d Cir. 2009) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)).

10

examiners and a private insurance company are not state actors for claims pursuant to 42 U.S.C. § 1983).

Plaintiff alleges that although Defendant Breite "is allegedly a private contract[or]" it is well known "that all IME doctors receive the[ir] stipend for service directly deposited into their account which makes them a strong candidate as a state actor." (Dkt. No. 16 at 16.) This allegation is insufficient to plausibly suggest that Defendant Breite is a state actor for purposes of 42 U.S.C. § 1983. *See Emanuel v. Griffin*, 13-CV-1806, 2013 WL 5477505, at *5 (S.D.N.Y. Oct. 2, 2013) (holding that "[t]he mere fact that a private actor is paid by state funds, or is hired by a state actor, is insufficient to establish state action."); *Koltz v. Bezmen*, 822 F. Supp. 114, 116-18 (E.D.N.Y. 1993) (finding no state action where a social worker had been requested by the Department of Social Services to conduct tests to determine whether children had been sexually abused).

Plaintiff alleges that Defendant Caulkins was a "site supervisor" at Ascension Lourdes Pain and Wellness Center and provided medical care to Plaintiff during his treatment there. (*See generally* Dkt. No. 16.) However, the Second Amended Complaint fails to allege facts plausibly suggesting that Defendant Caulkins was a state actor for purposes of liability pursuant to 42 U.S.C. § 1983.

Finally, with respect to Defendant Barnes, although she is a state actor as a manager of the New York State Workers' Compensation Board, the Second Amended Complaint fails to state a claim upon which relief may be granted pursuant to 42 U.S.C. § 1983 against her for two reasons.

First, to the extent that Plaintiff asserts claims against Defendant Barnes in her official capacity, those claims are barred by the Eleventh Amendment. "[A]s a general rule, state

governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366. "The State of New York Workers Compensation Board (WCB) is an arm of the State of New York." *Peterec-Tolino v. Ace Am. Ins. Co.*, 20-CV-5354, 2020 WL 5211045, at *3 (S.D.N.Y. Aug. 28, 2020) (citing *Palma v. Workers Compensation Bd.*, 151 F. App'x 20, 21 (2d Cir. 2005) (summary order); *Levitant v. Workers Compensation Bd.*, 16-CV-6990, 2018 WL 1274734, at *4 (S.D.N.Y. Mar. 8, 2018)).

New York[4] has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment therefore bars Plaintiff's § 1983 claims against Defendant Barnes in her official capacity as an employee of the New York State Workers' Compensation Board from proceeding in federal court.[5]

Second, with respect to Plaintiff's claims against Defendant Barnes in her individual capacity, Plaintiff fails to allege her personal involvement in any constitutional violation.

---

[4]   "An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at *9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.).

[5]   In addition, to the extent that the Second Amended Complaint is construed as alleging any claims against the New York State Workers' Compensation Board, those claims should also be dismissed based on the doctrine of immunity set forth in the Eleventh Amendment.

Instead, Plaintiff alleges that Defendant Barnes received letters and e-mails that made her aware that Plaintiff was being treated for rectal bleeding, that his Voltaren Gel prescription was doubled, and took no action to protect him.  (*See generally* Dkt. No. 16.)  These allegations are insufficient to allege Defendant Barnes's personal involvement in a violation of Plaintiff's federally protected rights.  *See Miller Ex v. Primo*, 22-CV-0680, 2022 WL 16556060, at *6 (N.D.N.Y. Sept. 29, 2022) (Lovric, M.J.) (citing *Roman v. City of Mount Vernan*, 21-CV-2214, 2022 WL 2819459, at *16 (S.D.N.Y. July 19, 2022) ("Simply being present at the scene of an arrest does not suffice for personal involvement.")) (holding that the plaintiff's allegation that a defendant "was present while others allegedly violated his rights, fail[ed] to plausibly suggest [the defendant]'s personal involvement in the constitutional violation.").[6]

As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983, be dismissed for failure to state a claim.[7]

---

[6]    In the alternative, the Court notes that Plaintiff has failed to allege facts plausibly suggesting a failure to protect claim against Defendant Barnes.  "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989).  "In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means." *DeShaney*, 489 U.S. at 200.  Plaintiff fails to allege facts plausibly suggesting that his freedom to act on his own behalf was restrained by Defendant Barnes or any state actor.  Thus, Defendant Barnes—and the government—was not obliged to provide any sufficient level of services, including medical care, necessary to ensure Plaintiff's reasonable safety.

[7]    Plaintiff appears to have opted not to amend his claims pursuant to the ADA.  (*Compare* Dkt. No. 5, *with* Dkt. No. 16.)

B.     Claims Pursuant to 42 U.S.C. §§ 1985(3) and 1986

"[T]o make out a violation of § 1985(3) . . . , the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 103 S. Ct. 3352, 3356 (1983). A "conspiracy" requires, for purposes of Section 1985, "a plurality of actors committed to a common goal." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 456 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999).

In addition, a claim pursuant to Section 1985 requires that a plaintiff allege "some racial or [ ] otherwise class-based animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004). The Second Amended Complaint fails to allege any racial or class-based animus behind the alleged conspirators' action. (*See generally* Dkt. No. 16.) Thus, Plaintiff does not sufficiently allege a conspiracy between Defendants and/or others to deprive Plaintiff of any federally protected rights.

Likewise, Plaintiff does not allege a claim under Section 1986, which proscribes knowingly failing to prevent a Section 1985 conspiracy "which such person by reasonable diligence could have prevented," and explicitly requires an underlying conspiracy under Section 1985. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim.").

As a result, I recommend that Plaintiff's conspiracy claims be dismissed.

### C. State Law Claims

Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent that Plaintiff has asserted any state law claims, the Court decline to exercise jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

In the alternative, I recommend that Plaintiff's state law claims be dismissed for failure to state a claim.

#### 1. Intentional Infliction of Emotional Distress ("IIED")

New York has adopted the Restatement (Second) formulation of IIED. *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115 (N.Y. 1993). "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Restatement (Second) of Torts § 46(1) (1965). This broad definition, is "both a virtue and a vice." *Howell*, 81 N.Y.2d at 122. "The tort is as limitless as the human capacity for cruelty. The price for this flexibility in redressing utterly reprehensible behavior, however, is a tort that, by its terms, may overlap other areas of the law, with potential liability for

conduct that is otherwise lawful." *Id*.  Therefore, IIED "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted).

Under New York law, then, a claim for IIED requires a showing of: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell*, 81 N.Y.2d at 121.

Under New York law, although "[t]he standard of outrageous conduct is strict, rigorous and difficult to satisfy . . . , that is not the case when there is a deliberate and malicious campaign of harassment or intimidation." *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (N.Y. App. Div. 1st Dep't 2018) (internal quotations omitted).  To be sure, "it is manifestly neither practical nor desirable for the law to provide[ ] a remedy against any and all activity which an individual might find annoying." *Nader v. Gen. Motors Corp.*, 25 N.Y.2d 560, 569 (N.Y. 1970).  At the same time, "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation," IIED provides a remedy.  *Nader*, 25 N.Y.2d at 569. "In other words, under New York law, the proper inquiry is not merely whether each individual act might be outrageous.  Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019).

The Second Amended Complaint fails to allege facts plausibly suggesting that Defendants' conduct was extreme or outrageous.  As a result, in the alternative, I recommend that Plaintiff's claim for IIED be dismissed for failure to state a claim upon which relief may be granted.

### 2. Workers' Compensation Law

Plaintiff alleges that Defendant NCAComp violated New York Workers' Compensation Law by denying him a gym membership. (Dkt. No. 16 at 13.) However, Plaintiff has already litigated the issue of his gym membership in state court. (Dkt. No. 5 at 8); *Brennan v. Vil. of Johnson City*, 192 A.D.3d 1287 (N.Y. App. Div. 3d Dep't 2021). The New York Appellate Division Third Department held that Plaintiff "successfully obtained authorization for a one-year gym membership, reimbursement for monies already paid for that membership and the right to reimbursement for future amounts paid for that gym membership." *Brennan*, 192 A.D. 3d at 1289. Therefore, the Appellate Division found that it lacked jurisdiction to entertain Plaintiff's appeal because Plaintiff obtained the relief that he sought and was thus, not "aggrieved by the Board's September 2019 decision such that he may invoke this Court's jurisdiction." *Id*. at 1288.

As a result, I recommend that, to the extent that Plaintiff seeks review of the New York State Workers' Compensation Board's decision regarding his gym membership, such claim be dismissed because he has obtained the relief he sought.[8]

## IV. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem

---

[8]   In addition, Plaintiff's claim may be subject to dismissal based on the *Rooker-Feldman* doctrine, which directs that except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007).

17

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[9]

In this instance, I conclude that any further amendments to Plaintiff's Second Amended Complaint would be futile. As a result, I recommend that Plaintiff's Second Amended Complaint be dismissed without leave to amend. *See Igarashi v. Sculls and Bones*, 438 F. App'x 58, 59-60 (2d Cir. 2011) (finding that the district court "properly dismissed the complaint without providing an opportunity to amend because any amendment would have been futile in light of the incredible nature of the allegations."); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments

---

[9] *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

previously allowed.'"); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

**ACCORDINGLY**, it is respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Second Amended Complaint (Dkt. No. 16) for failure to state a claim upon which relief may be granted and because it seeks monetary relief against a defendant who is immune from such relief pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[10]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: November 22, 2022
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[10] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[11] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).